Laubie, J.
This case conies into this court on appeal. The action brought was to restrain the auditor from entering upon the duplicate for taxation certain mineral lands claimed by him to be owned by the plaintiff.
There are two causes of action státed in the petition. In one it is stated that Jones, the plaintiff, had leases of certain mineral lands in this county; that the auditor assumed that he was the owner in fee of the minerals, and threatened, and was about to enter the same on the tax duplicate of the county for the year 1898, as omitted lands, under section 2808 E. S.,that plaintiff is lessee and not the owner in fee, of the minerals, but that the auditor would enter, and transfer the same, with a proper certificate, to the treasurer of the county unless restrained by the action of the court.
In the other cause of action it is alleged that the,Board of Equalization of the county had proceeded to act in the matter, for the year 1894, and had declared that the plaintiff was the owner of such mineral lands, as distinct from the fee of the soil, and had assessed their value at $20,750 for taxation, and had directed the Auditor to enter the same on the tax duplicate, which he will do unless restrained, etc.
■ And it is alleged that no notice was given of the meeting of the Board of Equalization for this purpose to the lessors, and that this action of the Board of Equalization was had under section 2792 of the Revised Statutes of this state.
Upon these matters issue was taken on the part of the Auditor as to the ownership of these mineral lands, and he alleges that the plaintiff is the owner of the''same within the meaning of the law, and that they should be entered upon the duplicate for taxation in his name: and denying that there'was anything illegal in 4he proceeding ,m any respect ;■» denying that the lessors did not have notice, 'and al..leging-that all ■ the■ parties did have notice, and that they appeared before the Board at the hearing.
*565 In the court below tlie case was tried, and resulted in favor of tlie defendant, and tlie petition was dismissed. From this holding of the court below an appeal was taken, and subsequent to the dissmissal of the petition, the auditor entered the “mineral lands'-’ on the tax duplicate, in the name of the plaintiff, and certified the same to the treasurer of the county. And thereupon a supplemental petition was allowed to be filed, and the county treasurer made a defendant, aud the case now proceeds against the treasurer of the county; and the treasurer filed an answer simply adopting the answer of the auditor in all its allegations as his: and in that condition the casé was tried by this court. There were but few controverted questions of fact. The original leases were offered in evidence, of which there were four; one from Mary I. Talbott et all to J. C. Tennent, one from F. A. Russell and wife to J. O. Tennent. one from C. P. Russell to J. C. Tennent. and one from Francis Witten and husband to J. O. Tennent, each for a separate tract of land. These leases.are alike' in all respects save as to names, dates and tracts of land; and were, it is agreed, executed with the, proper solemnities for the conveyance of land, were duly recorded, and were properly and legally assigned and transferred to the plaintiff. J. T. Jones, who entered into possession. developed the lands, and found oil in paying quantities in each tract in 1X91-92.
Upon the question of the action of the Board of Equalization, the evidence, discloses, and we find that all of the parties had notice, both the lessors and. the lessees, and the matter was contested before the board upon the point as to who owned the minerals and were the proper parties to assess the taxes against... The lessee, Jones, claimed that they should be assessed against,, and in the name of the lessors, and the lessors claimed that they should be assessed against, and in the name of the lessee, and the Board of Equalization, found that the lands should be placed upon the duplicate in *566 the name of J. T. Jones, the lessee, and. the taxes assessed against him; as did the auditor whose proceedings were in all respects formally correct.
That brings us to the real question in the case between ■the parties.
These minerals could not be placed on the duplicate for taxation as against Jones, the assignee of these leases, except as lands, and they could not be considered as lands unless the fee in the soil and in the minerals had been separated by conveyance from the owner of both. ' •
The-Board of Equalization acted under section 2792 of the Revised Statutes, as amended January 30th, 1891, and section 2804. After declaring that ‘ ‘ each separate parcel of real property shall be valued ■ at its true value in money, etc.,1 ’ said section 2792 provides as follows: ‘' And provided further, that the annual Board of Equalization may reduce the mineral value assessed against lands containing or producing petroleum (oil), natural gas, coal, ore. limestone, fire-clay or other minerals in proportion as the product of such mineral has diminished, if such mineral product was considered a part of the value of said real estate' in its previous appraisement for taxation; and annual assessors or Boards of Equalization may assess such mineral values as developments of its product or existence are made.”
This section refers simply to real estate, and it is to be listed “as the ownership thereof appears.” So that in order to have minerals seperately assessed and listed from the soil, they must be owned separately, and owned as land; a mere interest in them by lease to a party is not sufficient; he must have a fee in them as of land; and if he has, if they have been so separated by the owner of the whole from the soil, then under this section, and section 2804, the Board of Equalization has a right to assess their value, and direct that they ahould be entered upon the duplicate as against the owners thereof.
*567 Bo it is in section 2803, with reference to the duty of the auditor to place, upon the duplicate lands which have" been theretofore omitted to be entered upon the duplicate. Section 2803 provides that “in all cases where the county auditor shall discover or have his attention called to the fact, that any assessor in any previous year shall have omitted to return, or shall in any future year omit to return any lands, town lots, or any improvements, structures or fixtures thereon subject to taxation, situated within his county, or if any such property lias escaped taxation by reason of any error of the said auditor, it shall be the duty of said auditor to ascertain the value thereof for taxation, as near as may be, and to enter said lands, town lots, or improvements upon the duplicate of the county, then iu the hands of the county treasurer of such county, and to add to the taxes of the current year the simple taxes of each and every preceding year in which said property shall have escaped taxation, etc. “
So that under neither of these sections, whether the proceeding be by the county auditor or by the Board of Equalization, can action be taken unless the subject-matter is land, and is owned in fee by the part)- against whom it is tcf be assessed.
Now, it seems from the reading of section 2792, that petroleum oil and natural gas are classed as minerals, the sepárale ownership of which makes the possessor, or owner, owner of lands. Ho that there is no necessity of entering into and discussing the question whether petroleum oil or natural gas are minerals that may be, in place, conveyed and treated as land. The statute fixes it, and,therefore, we need not bother ourselves with any consideration of that question. Nor is there any question made as to the authority of the auditor or the Board of Equalization to act in the premises Indeed, the only question pressed in the case is. as to the effeel of these leases or conveyances: are *568 they, such as separates the minerals from the soil, and conveyes to the lessee or grantee ownership in fee of the minerals in place, or are they merely leases or conveyances conveying an incorporeal hereditament only. If they are leases merely, or contracts conveying merely an incorporeal hereditament, then the action of the auditor and Board of Equalization cannot be sustained — then Jones would not be owner of any part of the lands in question.
We think they are leases. Leases, because, first, the parties apparently intended them to be such, and, secondly, ■because the legal effect of the words used make them but leases.
Upon these propositions separately.
1. The intent of the parties then of itself, if that intent can be ascertained, governs — governs in this case as in any case where the court is called upon to construe the meaning of a written instrument, if such intention is not contrary to law. In every word almost of these instruments that has any bearing upon the qugstion whatever, the parties have evinced their intention that they should be simply leases of the minerals, and not conveyances in fee.
They do not start out with the usual and ordinary words of conveyance of lands, but of a lease: ‘! Covenant and agree to lease, and by these presents has leased and granted the exclusive right, etc.,” and the ludxmdum is to “the party of the second part, his heirs and assigns, to have and to hold said premises for and during the term of five years, and so long thereafter as oil or gas can be produced in paying-quantities.” Part of the minerals when found and raised are to be delivered to the lessors; and for the gas the lessee is to pay for each well the sum of ‘‘two hundred dollars per annum” when the gas is “utilized.” And it is further agreed that the second party, his heirs or assigns, shall have the right at any time to surrender up ‘ ‘ this lease, and be released from all moneys due and conditions unfulfilled.”
*569 It is perhaps well enough to strip the case of any question as to natural gas, as that does not seem to enter into the contention of the parties. There is no claim that natural gas has been discovered in paying- quantity.
The parties have not used apt words of conveyance in fee in the instruments. The defendant, however, claims otherwise, because in the granting clause the word ‘ ‘ granted’ ’ is used; but what estate is granted in words,in the oil in place? There are in the instruments no express words conveying the oil in place. If they convey the oil, they do it by inference, solely, and not by expressed intention.
They provide that the party of the first part, “does covenant and agree to lease, and by these presents has leased and granted the exclusive right unto the party of the second part, his heirs or assigns, for the purpose of operating and drilling for petroleum and gas, to lay pipe-lines, erect necessary buildings, re-lease and subdivide all that certain tract of land situate, etc. ” What is granted in words is the exclusive right to lay pipe-lines, erect necessary buildings, and to re-lease and subdivide the land. These rights are granted for a certain named purpose, to-wit: — “for the purpose of operating and drilling for petroleum, ’ ’ but there is not a word which expressly grants the right to take the oil, or any part of it.
Again there is no habendum clause as to the oil. The iiabendum clause is apparently purposely limited to the same' things as the granting clause, and up to this point it might well be assumed that the parties were contracting in regard to a matter which they had already agreed upon and determined between themselves by prior contracts. If the granting clause of either of the instruments grants a right to the lessee to take the oil, it is only by inference that it does so; and the habendum clause is no more explicit than the other.
As to the legal effect of the words used.
*570 2. Considering the provisions of these instruments, each is in legal effect from the words used, at most, but a lease at will. As already stated, the instruments do not purport to convey oil in place. There are no words which expressly grant or attempt to transfer, in the granting clauses of the instruments, any'right to the oil in siiu. A right it may be conceded, is granted by inference of operating and drilling for petroleum oil, but they do not in express terms convey, or attempt to convey, the oil to the second party.
Again, the instruments provide that the term is to continue for five years, and so long as oil is produced in paying quantities. The price of oil, like all other commodities, fluctuates. The commercial world has just had an extreme example of it. To-day it is up, to-morrow it is down. If these lands, for instance, produced a hundred barrels of oil a day, and oil was fifty cents a barrel, it would be produced at a loss; while if it were two dollars a barrel, large profits would be made. Say, for instance, that in the year 1893 the wells produced one hundred barrels a' day, and oil was selling at two dollars a barrel; while during 1894 oil was worth but fifty cents a barrel, but the wells were producing the same quantity of oil; and the lessee terminated the holding, because the oil was not produced in paying quantities. But in a short time after the lease is 'determined by the lessee, oil jumps to two dollars a barrel again, and the lease is as valuable ns before. Evidently, therfore, the market price controls, and not the quantity or quality of-the mineral. If the market price determines the ownership,does it transfer the title, also? There is no provision for a re-conveyance. Perhaps, in that event, it might be said it rendered ‘' this lease null and void, and not binding on either party,5' as in other events provided for in the instruments. All this is incident to a lease, and not a deed. But further, and more .emphatic, is another provision, as follows: "And it is further agreed that the second party, his heirs or assigns, shall have the right at any *571 time to surrender up this lease, and be released from all moneys due and conditions unfulfilled; then and from that time this lease and agreement shall be null and void, and no longer binding on either party, etc.so that the lessee has a right at his own pleasure, at any time, to 'put an end to the contract and determine the holding. Such a provision is entirely inconsistent with the idea of a conveyance in fee. Whatever else the instrument may be called, it is not that. In law, it makes the instrument a license, or at farthest a lease at will.
But again, as to other parts. The consideration to be paid in hand is one hundred dollars. What for? For the oil ? Certaintly not. It is for the preliminary privilege, the use of the land for the purpose of drilling and testing the land for minerals of the character described. There is no bargain and sale of the oil in place for a consideration m solido. It is to be paid for as it is obtained; paid for by a division of the thing itself between the parties. Not by a royalty of so much money per barrel, or otherwise; not as when a royalty of so much money per ton upon coal and other minerals is paid, but by a division of the thing itself. It is to be paid for as it is raised in this way — the lessee is to give the lessors one-eighth of the oil obtained; which is inconsistent with the idea of a bargain, sale and transfer, co iiisfanli, of all the oil in place to the party of the second part; and as he cannot be compelled under the terms of the contract, to raise and take any part of the oil, if there is a bargain, sale and transfer of the oil in place, it is a sale and transfer without a consideration. Such must, be the effect of the instruments if they are conveyances in fee. Instantly upon their execution and delivery they would transfer all the interest in the oil, if there, at least in paying quantities, and its ownership to the party of the second part, and upon a consideration entirely dependent on his will. The auditor. entered upon the *572 duplicate that the plaintiff was the owner of seven-eighths of 'the mineral lands. These instruments did not express any intention to convey an undivided interest. In the granting clauses there is no reference whatever to any undivided interest, but it is of the whole, if it is a bargain and sale of the oil in place.
A conveyance of a mineral in siiu may be made, undoubtedly, without those apt words which are necessary to convey a fee; but the instrument in order to effectuate that object, must convey and transfer the whole usufruct of the mineral, not the usufruct of a part of it, nor of a part of the usufruct of the whole, but the entire and absolute dominion over all of it. And herein these instruments are lacking. The party of the second part is not given entire dominion over the whole of the oil. He is to raise an eighth of it for the lessors, and as their property, and the whole is to be turned into the pipe-lines undivided, a certain portion to be credited to each. The instruments invest the parties of the second jiart with the usufruct of, and dominion over, only a part of the oil, and, therefore, cannot have the effect in law of a conveyance in fee, because wanting in those elements which are necessary to supply and take the place of apt words of conveyance. And to cap all, the lessee does not obligate himself to put down a single well, or to mine a particle of the oil. All he promises to do is to bore a well, or .to pay a rental of $10.00 a month until he does; but the only result of the failure to do either, is that it “shall render this lease null and void, and binding on neither party;” and, consequently, no obligation to mine and take the oil can be implied. When the conveyance in fee of minerals in situ is to be inferred from the grant of the exclusive right to mine and take them, there must be a corresponding obligation on the part of the grantee to mine and take them, where the consideration is to be paid as and when the minerals are taken.
Upon these propositions, the latter of which especially *573 counsel have given little or no attention to, two cases only need be referred to — cases principally relied upon by counsel for defendant herein — Edwards v. McClurg, 39 Ohio St. 41 the leading case in Ohio, and Caldwell v. Fuiton, 31 Pa. St. 475, the leading case in this country. In the first of these cases the agreement provides that “that in consideration of one dollar paid by the second party to the first party, and also of the covenants and agreements of the second party, to be performed as hereinafter stipulated, the first party has agreed to sell, and does hereby give, grant, bargain, sell and convey unto said second party, their heirs and assigns the following described coal stone, mining rights and privileges, to-wit: etc.;” — full, adequate,, perfect words, to the extent of formality even, of a conveyance in fee — a bargain and sale of the stone coal, and all mining rights and privileges. It further provides that the parties shall proceed to develop the coal, and if they find it in quality, quantity and thickness to warrant economical mining, then they are to open the mine of coal, and mine it, and take out not less.than thirty thousand tons per yean, or pay for that quantity as though mined each year, and to pay thirty cents per ton for each ton of coal mined. And settlements are to be made upon certain periods in the year. And accounts are to be kept, and weights. And then it is provided “it is mutually understood and agreed that said second party, their heirs >and assigns, shall have the right to abandon this contract, and yield up said coal mine and privileges at any time they shall determine in their judgment, that the coal is in quality, quantity or condition no longer minable with economy and profit, and when this contract shall be ended, for any reason, said second party, their heirs or assigns, shall have the right to remove their machinery and other structures and property from said land.”
The court held in reference to it as follows: “1. A deed containing apt words to convey an estate in fee must be held *574 to have that effect in the absence of other words showing clearly and unequivocally a different intention. * * *
1. All minable coal in place passed absolutely to the grantees. 2. After .such conveyance no interest in the minable coal remained in the grantor subject to be mortgaged. 3. A mortgage upon the remaining interest of the grantor in the land, did not cover the purchase-money due or to become due from the purchasers of the coal.”
This was by a divided court, Judge Okey having dissented in. a very able opinion. Mellvaine, J., in the opinion delivered for the majority of the court, after reciting what the granting clause was, says:
‘ ‘ The intention of the parties to transfer a fee-simple estatej in the coal, must be found from this language, unless we find in other parts of the instrument a contrary intention expressed in words equally plain and unequivocal.
“We do not find in the instrument any other language which, by fair and reasonable interpretation, is not entirely consistent with the intention so clearly expressed by the terms above quoted, except in the last paragraph, which reads as follows: — ‘It is mutually understood and agreed that said second party, their heirs and assigns, shall have the right to abandon this contract, and yield up said coal mine and privileges at any time they shall determine in their judgment that said coal is, in quantity, quality or condition, no longer minable with economy and profit; and when this contract shall be ended, for any reason, said second party, their heirs or' assigns, shall have the right to remove their machinery and other structures and property from said land. ’
‘ ‘ The exact import or legal effect of this language is not clear. ”
‘ ‘ The defendant in error claims that, when' construed in connection with other parts of the instrument, it shows the intention of the parties to have been to make a lease of the coal, or to grant a license to enter and mine. Either of which would be inconsistent, with the intent to convey a fee. To this it may be answered that the subject-matter of the contract was land — coal in place. It is very clear that the parties intended that the coal should be mined by the gran *575 tees, and converted into personalty and disposed of by them. The coal was not to revert to the grantor. Nothing was to be returned to him except the consideration to be paid for the thing granted. Such is not the nature of a contract of lease.. It was a sale of the coal for a consideration. True, a license was granted to enter on the lands of the grantor to mine and remove the coal conveyed — the coal of the grantees, not the grantors.
"‘On the other hand, we think effect can be given unto the terms of the grant, and also to the stipulations of the contract last quoted.”
‘‘With regard to these stipulations it may be said, with much show of reason, that the parties thereby intended to save and except from the grant, such coal as could not, with economy, be mined with profit. If this be not the true interpretation, then, we think, the right reserved to the grantees, to abandon the contract, when they may determine, in their judgment, no more coal remains in the premises, which, with economy, may be mined with profit, must be construed as a condition upon the happening of which the estate granted is determined, and the unminable coal reverts to the grantor, his heirs, assigns or devisees. This right to abandon the contract, does not rest in the ‘mere will and pleasure of the grantees, their heirs or assigns, but upon* their judgment exercised in good faith. Cook v. Andrews, 36 Ohio St. 174. So that, upon either interpretation, all minable coal, or, at least all that was minable in the judgment of Stambaugh and his associates, and their heirs and assigns, passed absolutely, as lands from Adam McOlurg to'the grantees named in the deed of September 28, 1867. ” * * *
In Caldwell v. Fulton, 31 Pa. St. 475, the court went much farther, and held that by a deed in which there was no words imputing a grant of the fee, but which gave absolute-dominion over the stone coal in certain lands to the grantees, who agreed to pay a certain and fixed sum in solido, a conveyance of the coal in place absolutely passed. Without referring to other cases I will merely add, that I know of no case, where, upon similar facts, a different conclusion was reached.” , (The italics are my own.)
It is evident, therefore, that this provision, this stipulation, which was inconsistent, as was stated by the court, *576 with the intention to convey a fee, if the import and legal effect of its language had been clear, or if it had conferred a a right to abandon at mere will, would have compelled the court to hold the instrument be a to mere license or lease.
The instrument in that case, in every respect in which it was held to be a conveyance in fee of the coal in place, differs irreconcilably, as we have seen, from the instruments before us, and show clearly that such instruments are not conveyances in fee of the oil in place.
Here, for instance, the second party has an absolute right to annul the contract at any instant, at his mere will. Upon no condition, not upon the condition that the oil remaining in the land is in quantity, quality, or condition, no longer minable with economy and profit, but without condition, at any instant, to abandon the contract, and be ‘1 released from all moneys due and stipulations unfulfilled, ’ ’ and the ‘ ‘ lease and agreement to be null and void, and no longer binding on either party.” Such a provision and right as that is totally inconsistent with and repugant to the idea of a conveyance in fee, and especillay where the instrument contains no apt words in the.granting clause to convey afee, and where there is no corresponding promise to mine and take the mineral.
In Caldwell v. Fulton, supra, the wording of the instrument gave to the second party in the contract the absolute and uncontrollable dominion over the whole mineral, and the usufruct of the whole. I doubt the statement that there were no apt words in that instrument to convéy a fee in the minerals. A copy of the instrument is not given, but Strong, Judge, delivering the opinion says,: — “The deed conveys two tracts of land; describing the tracts by metes and bounds, adds also the full right, title, and privilege of digging and taking away stone coal, to any extent that said George Greer may think proper to do, or cause to be done, under any of the land now owned and occupied by the said James Caldwell, etc.” So that -whatever formal words of *577 conveyance in fee were in the granting clause, transferring the land, applied to the stone coal, because it is in the granting clause, and the word “also” connects it with the granting words used as to the lands. But we assume that it did not, and now pass on to what is said by Judge Strong, as follows:—
“Then follow the habendum and covenants of warranty, in one of which this subject of the grant is called ‘the aforesaid right to the stone coal, ’ and in the other, ‘ the right of stone coal hereby given. ’
‘ ‘ The consideration mentioned is single for the entire subject conveyed by the deed.”
“It is to be observed, in the description of the thing granted, that there are no limits fixed upon the extent to which coal might be taken from the land then owned and occupied by the grantor. The grantee’s right was co-extensive with his will; not necessarily to be exercised by himself, but one which might be enjoyed by others whom he should authorize. No form of words other than those employed could have given him larger dominion. * * * *
“If then the ownership of the coal or other minerals in a tract of land may be vested in one person while the right to the surface belongs to another, the next inquiry is, by what words it may be granted. There are two modes in which the subject-matter of a deed maybe described, both equally potential. The one is by the description of the thing itself, as of lands by meters and bounds, or by a known name, and the other is by a designation of its usufruct, or of the dominion over it. Thus a grant of the rents, issues, and profits of a tract of land is uniformly held to be a grant of the land itself: Co. Lit. 4 b. Judgments abound to this effect in regard to devises, and though in wills and deeds the rules of construction differ relative to words limiting the estate granted, yet there are the same of words describing the subject-matter of the grant. There are also cases of the same character to be found in regard to deeds. Thus it has. been held that by the grant of a boilery of salt the land passes, for that is the whole profit: Id.; or a mine of lead Id. 6 a. So by the grant of all growing trees: Culpepper’s Case, Cro. Eliz 522. See. also Clapp v. Draper, 4 Mass. 266 (3 Am. Dec. 215) *578 Fish v. Sawyer, 11 Conn. 545. The reason is, that the grant of the thing can be no more than the grant of the full and unlimited use of it. So, too, the general power of disposal without liability to account is equivalent to ownership itself, it being the highest attribute of ownership, and the gift of the one necessarily carries with it the other. This is the docrtine of Morris v. Phalen, 1 Watts, 389.”
’’Applying these principles to the case in hand, why was not the ‘ ‘ deed of Caldwell to Greer a conveyánce of the coal in the land owned and occupied by the grantor? Because, says the plaintiff in error, it' is not a grant of the thing itself, but of a right to take it, and until it is seized and taken, the property in the thing remains in the grantor. But if the conveyance of the whole use of a thing, and of the absolute dominion over it, is a grant of the thing itself, only differing in the mode of describing the subject, it is not easy to see what more CaldwTell could have sold than he did. * * * The whole usufruct of that (the'coal) as well as the entire dominion over it, was granted. The deed is not a conveyance of a part of the usufruct, nor of the usufruct of part of the coal, but of the entire enjoyment.”
In that case the whole of the coal passed, or the usufruct of the whole; no part of it was to be restored, or thereafter to belong to the lessor or grantor, and the whole dominion over it wras given to the grantee. Not so here. The usufruct of the whole of the oil is not given to the grantee, nor the dominion over the whole; he raises the undivided one-eighth of it for the grantor, and acquires the right of disposition, and the usufruct of only the undivided seven-eighths.
Now, Judge Strong proceeds to distinguish that case from the cases cited by the counsel, and among others the case of Chetham v. Williamson, 4 East 469, and as to that case he said:
“The subject was not described in the granting part of the deed, nor in connection with the -other property-conveyed. .The grantee after the habendum covenanted that it should be lawful for Hyde, one of the grantors, and his' *579 heirs, at all times to enter into all or any part of the premises to search for and dig for coal or stone, or any other mine or mineral whatsoever, and the same to take, have, and carry away to his own use; provided and upon condition that ft should and might be lawful for the grantee, his heirs, etc., to deduct from the rent reserved, etc.
“It is one very material distinction, that in Chetham v. Williamson, supra, the right to take the minerals was not a thing for which the consideration mentioned in the deed was given. They were to be paid for when taken. In a deed of bargain and sale, it is the payment of the consideration which transfers the use. and with it the legal title.
Again, Doe v. Wood. 2 Barn & Ald. 719, is distinguished by the learned judge from the case before that court because it was a right to dig. search for and take minerals that should be found during a term of twenty years, and not a grant of the entire subject, and "that the indenture also contained covenants of the grantee to render a share' of the ore he might find, and to allow the grantor himself to drive, adits.
So as to the case of Grubb v. Bayard, 8 Wall. Jun. 21. " which was distinguished by Judge Strong on the ground that 5i there it was provided the grantee should pay unto the grant- or, his heirs and assigns, the sum of six pence for every ton taken from the premises. This was held to be an incorporeal hereditament. It will be observed that there was no present consideration passed, nor was there a covenant of the granice lo search for or take any ore. He might never have taken any. In that event, if the deed had been held a conveyance of the iron ore, there would have been a sale without a consideration. Nor was it a grant of the whole, but. said Mr. Justice Grier, of the iron that should be. found within the term, and on that aeouut was but a license." And Judge Strong further-says:
“In Grubb v. Bayard, supra. Judge Kane delivered a . concurring opinion. In it he refers to the absence of a covenant by the. grantee to work the mi lies, and thus make the rent reserved of value, as a circumstance of much importance ' *580 in determining the intention of the parties. That it is so is obvious, for without it the contract might have proved entirely fruitless to the vendor, while in the present case Caldwell has received all that he ever can receive. The right, whatever it is, is one for which all the consideration has been paid. These are all of the cases adduced to sustain the doctrine that a conveyanceof a right to dig, take, and carry away the coal or minerals in a tract of land, though the grant be unlimited in quantity, time, or purpose for which the minerals may be taken, passes only an incorporeal hereditament. None of them were decided upon the ground of any supposed distinction between the right to take all the coal and carry it a,way, and a right to the coal itself. They are all cases in which there was no unrestricted power of taking and disposition conferred upon the grantee. The coal or mineral was to be taken either for a limited purpose, or in restricted quantities, and generally toas not to be paid for until taken."' (The italics throughout are my own.)
J. P. Spriggs, Hunter, Mallory & Jeffers, Pearson & Okey, and Blackmarr & Young, for plaintiff in error.
Weems, Walton & Cook, and Robert W. McCammon, for defendant.
No case is cited, and we know of no case, where a contract like the ones we are considering has been held to be a sale of the minerals in situ; and especially, we know of no case where the instrument has been held to convey the minerals in fee, where the consideration is to be paid by any kind of royalty and there is no promise upon the part of the lessee to mine and take the minerals, and where the lessee has the right to abandon the contract at his mere will and pleasure.
A decree will be entered in this case that the injunction be perpetual as prayed for in the petition.