(Judge Mooney of the Third Circuit sitting in place of Judge Parker.)

### CHARLES E. TUCKER V. JOHN G. WATTS ET AL.

1. GAS AND OIL LEASE SILENT AS TO TERM—RENDERED CERTAIN BY SUBSEQUENT EVENTS.

  Where a gas and oil lease, silent as to the length of its duration, is attacked on the ground of uncertainty, if the term may be fixed or established by subsequent events agreed upon in the lease, it is sufficient to create the certainty that the law requires. Hence, where a lease provides that lessee must complete a well within ninety days or thereafter pay a certain sum until completed, and if oil or gas be found the lessee shall deliver to lessor a certain royalty share of all the oil produced, or pay annual rental for each gas well while used, the lease will endure for such length of time as may be reasonably necessary to produce the oil and gas lying in and forming part of the leased premises.

2. ASSIGNMENT OF GAS AND OIL LEASE NEED NOT BE FILED OR RECORDED, WHEN—SEC. 4112a REV. STAT.

  Where a valid gas and oil lease has been duly recorded by the original parties, an assignment thereof by the lessee to a third person, is valid between the parties thereto without filing or record under Sec. 4112a Rev. Stat.

3. ABANDONMENT OF GAS AND OIL LEASE—LESSEE MUST PROCEED WITH DILIGENCE, ETC.

Where the term of an oil and gas lease is not specifically stated, and the benefit to be derived therefrom depends upon a reasonable carrying out of its terms, the lessee must proceed thereunder within a reasonable time and with proper diligence; and the removal by lessee of the drilling apparatus from the leased premises and failure to drill wells for a period of five or six years because of an apprehended loss in their operation, coupled with an expression of intention to wait until an advance in the price of oil, and the fact that other lands in the vicinity were actively worked during such period by lessee under another lease, is an unreasonable delay constituting an abandonment, and terminates the lease.

APPEAL from common pleas.

**Gilbert Harmon** and **Fries & Painter**, for plaintiff.

**Baldwin & Harrington** and **J. O. Troup**, for defendants.

MOONEY, J.

This case comes here from the court of common pleas on appeal. The plaintiff named avers in his petition that he is the owner of a leasehold interest and is in possession of certain lands described, in Wood county, Ohio, for the purpose of producing oil, and that the defendant, John G. Watts, has entered into possession of the lands and drilled thereon and is producing oil and is converting the five-sixths part thereof to his own use. The prayer of the petition is, that Watts be enjoined from such conversion and that the Buckeye Pipeline Company (with the lines of which the tanks upon the lease are connected) shall be enjoined from delivering to defendant the oil produced upon said premises.

The defendant, John G. Watts, files an answer, which is, in substance, a general denial, and then avers that he is the owner of the leasehold interest upon said lands and prays for affirmative relief.

This averment, of the interest in Watts, is denied in the reply.

From the evidence in the case, as well as from the pleadings (more specific than has been stated), it appears, that on November 21, 1892, Stearns and Ferris, the then owners of the fee of the lands in question, executed and delivered to Monroe and Harmon a contract, or a lease, covering all these lands; that afterwards this contract was filed for record and was recorded, the date of the filing being April 5, 1893; and after this time Monroe released to Harmon all his interest in the lands and Harmon afterwards conveyed to the plaintiff in this action the interest, if any, arising and existing under the lease, and it is under this contract that the plaintiff claims. It is evident that the claim or title to relief of the plaintiff in this action must be based upon the validity of the contract originally made and the subsistence of an interest or es-

tate thereunder at the time of the bringing of this action, and, therefore, the terms and conditions of the contract originally entered into between Stearns and Ferris of the one part and Monroe and Harmon on the other, become, as we think, of controlling importance in the case. By this contract the landowner, for a consideration of $100, grants unto the second party the privilege of drilling for and removing the oil and gas from the premises together with the right to place thereon such fixtures as may become necessary for the production, transportation and storage of oil or gas and the right to remove such fixtures at the pleasure of said second party. It is provided that if oil be found the landowner shall receive a royalty share thereof of one-sixth of all that may be produced from the premises. Should gas be found, the compensation to the landowner shall be $300 yearly for each and every gas well used and while used. It is further provided, that said Monroe and Harmon shall complete a well upon the premises within ninety days from the date of this agreement, or thereafter shall pay to the first party $25 per month until such well is completed. A well was completed· in August, 1893, and all the rental due, at $25 per month, from the expiration of the first ninety days after the execution of the agreement, was paid. Nothing was found in this well so drilled, and shortly after all the drive-pipe and casing, derricks and all appliances usual and necessary for the drilling of wells, were removed from the premises. Harmon and Monroe had other leasehold interests for oil purposes in the vicinity, and from time to time prosecuted drilling for oil at some distance, and then in the near vicinity of these lands, but from 1893 to 1899 they had never entered upon this land for the purpose of drilling or further prosecuting their search for oil, nor had the plaintiff prior to the bringing of this action, nor any one for either Harmon and Monroe, nor the plaintiff, except that at one time a stake to mark the location of a well to be driled in the future, was driven. There is some evidence (but the fact is in dispute) that both Harmon and the plaintiff, at various times, declared their intention not further to prosecute their search for oil upon the lands described in this petition. And there is evidence tending to show that while Judge Harmon was the sole owner of this lease, he declared his unwillingness at the time of making the statement to further drill, unless the royalty was reduced, and it is a fact established in the case that Judge Harmon was of opinion and intended to drill only in the event that the price of oil by its advance would justify the drilling to secure the quantity of oil that it was believed could be found by drilling upon these lands; his conviction· at that time being that oil could not be found in quantity

sufficient to make drilling profitable at the then price for which oil could be sold.

The assignment of this agreement by Judge Harmon to the plaintiff in this case was not filed for record, nor recorded. It is contended now by the defendants in this case that this lease is not in force, for the reasons: First, that the assignment has not been recorded, and, therefore, the plaintiff in this case has no title to the leasehold, even though it is still a subsisting interest; second, that this lease was invalid *ab initio,* for the reason that no *term* is stated or fixed by its terms; and, third, that if the lease ever were valid, all interest of the plaintiff in the premises has been lost by reason of the abandonment, either by himself or Judge Harmon.

We are of the opinion that, under the terms of Sec. 4112a Rev. Stat., that the assignment of a lease, as between parties sustaining the interests in the lands that these parties do, need not be filed for record, or recorded, and that the failure to so file or to so record is an immaterial circumstance in this action. The lease in this case was filed for record and recorded, and, therefore, if the lease were otherwise valid, an interest passed and terms were complied with to some extent, and if the performance of these contract obligations upon the part of Harmon changed or affected or increased the inchoate interest theretofore existing, that interest was vested in him, he was possessed at all events with the interest, and that as to persons, except third persons acquiring an interest in that interest under Harmon, the title of the plaintiff in this case became valid and subsisting by the act of transfer without filing or recording the evidence of the assignment.

We are not of opinion that this agreement is invalid by reason of the fact that no term is fixed in it. This was a contract that was entered into between the landowner and an oil producer, for the purpose of enabling the oil producer to follow his occupation upon these premises and produce oil and gas therefrom. A right to possession, at least for this purpose, passed to the oil producer. He had a right to explore for oil, and when he did discover it the contract then would endure for such time as was necessary to accomplish the purpose of the contract, the producer acting with reasonable diligence.

In this case, then, if oil had been found, Harmon or his assignee, would have had the right to retain possession of this land for such length of time as would be reasonably necessary to the production of the oil and gas lying in and forming part of the lands. Now it is a maxim of law that that is certain which can be rendered certain, and the existence of the means of rendering need not attend the formation of the con-

tract, if subsequent events established or fixed the means that had been agreed upon in the contract, that would create the certainty that the law requires. We, therefore, think, that by necessary implication, the period that this contract was to endure was fixed by the terms of the contract, and that, in consequence, the contract is not subject to the objection in that respect that is taken to it.

The sole remaining question in the case is that of abandonment. It will be observed that by this contract there is granted the privilege of producing oil—the privilege of going into possession of this land for the purpose of exploring for oil is the primary right. This right, the cases are agreed, is not an estate in the land, and while some difficulty is experienced by the different courts in the adequate legal expression of just the right conveyed, the substance of it is recognized by all. Some of the cases call it a right to possession, and some a license, the terms varying, but all agreeing that to the producer is given the right to go upon the land and make search. No estate or interest in the land itself arises until the product is found, and then the interest becomes vested, and, being vested, may be called as estate.

It was evidently the theory of the original party to this contract (the second party) that, having drilled one well, required by the terms of this contract, that thereby a perpetual interest was granted, and that if at any time in the future oil should be found, it would become the property of the assignees or of the party who succeeded to the interest of Harmon in this lease. To that construction of the contract, we cannot agree. The contract was entered into for the benefit of both the producer and the landowner, and if oil were found, the landowner was entitled to his share. The time of the enjoyment of this beneficial interest in the contract is something that could not be fixed by the caprice of the driller; it was his right and duty to do the drilling, but it was equally the right of the landowner, within a reasonable time, to enjoy the fruits of this contract so far as he was entitled to them; and so we think that a fair construction of the rights that each of the parties had under this contract is; while upon failure to find oil when the first well was drilled, the interest of the owner of this contract (the producer) would not cease, or be in any manner forfeited, while he still had the right to continue his search, that he was bound to do so within a reasonable time. That is more especially the case where, as here, the duration of the lease is not fixed expressly by its terms. Now, to this contract Ferris was a party. She had no interest in, and no benefit was conferred upon her by, the finding of oil, or its production upon adjoining lands in the immediate vicinity, or at distances remote; she had the right to have proceedings

taken looking to the securing to her of the benefits under this contract, and within a reasonable time.

It is true that oil developments in the vicinity are matters of consequence in cases of this kind, because, having expended money in the completion of a well, the parties here were justified in waiting a reasonable time for other oil producers, or themselves, upon adjoining lands to cast sidelights upon the oil probabilities in these various lands, but the simple fact of activity, by Harmon or by the plaintiff, upon adjoining lands, would not authorize an undue and unreasonable extension of time for further drilling upon these lands. Now, from 1893 to 1899 no step had been taken looking to immediate drilling upon these lands—six years, with oil wells driling in upon lands within a half a mile, or perhaps a less distance, and nothing to indicate that rights were claimed under this contract. As has been stated, it is quite evident that Judge Harmon was of opinion that oil from these lands could not be produced profitably, and he was unwilling to experiment further upon these lands at the then price of oil, in fact, we take it from the record, as well as from the arguments, that the specific intention was to drill further wells when there was an advance in the price of oil. Now, an intention to drill further wells when there is an advance in price, is tantamount to an intention not to drill further wells until after such advance. The advance in the oil market was a matter that was entirely beyond the control of this lessee; it either might happen within a reasonable time, or it might never happen, and so the intention, so far as there was an intention, was to permit the matter of drilling to go to a time when in the judgment of the lessee the price would justify the expenditure. But, under the terms of this contract, Harmon was bound to drill within a reasonable time, whether the price of oil would make it profitable or not. This intention, therefore, to drill only when the price of oil would make it profitable, was an intention, not to comply with this contract, but to comply with some other contract which he had substituted for it. His relinquishing of any intention to drill strictly in accordance with the terms of this contract, as well as the lapse of time (which we think was unreasonable) we believe resulted in an abandonment of the interest that accrued to Harmon, and consequently to the plaintiff, under the terms of this lease.

I might say, as tending to support this conclusion, that very recently, in a case unreported, the circuit court of the third circuit held that where nothing had been done in the way of drilling after the failure of the first well, for four years, upon a lease where the lessees had expressly agreed that they would drill another well when a Mr. Geezy, a

consumptive, had returned from Ashville, North Carolina, from whence, being an invalid, he never did return, that after waiting four years for his return and drilling no well, it resulted in an abandonment. It is but fair to state, however, that the activity in oil drilling around that leasehold interest was somewhat greater than in this case.

The case of Baumgardner v. Browning, 5 Circ. Dec. 394 (12 R. 73), relied upon here by the plaintiff, we think, so far from being authority to sustain his contention here, is rather, against the plaintiff's position. In that case, a lease for oil purposes, upon a cash payment of $500, was executed and the term fixed at twenty years, and that was a definite term. It was held finally in that case that a failure to drill for a certain length of time did not result in an abandonment or forfeiture of the leasehold interest, but it was not held in that case that the lessee was entitled to the full period of twenty years, but it was, in substance and effect, held that a reasonable time for the doing of further drilling upon the premises had not expired. It is evident from a reading of the entire case, that the court intended to decide the case upon its own particular circumstances; and the court had, I believe, theretofore held in other cases, and where the term of lease was less clearly fixed, and where the territory had been more thoroughly developed for oil purposes, that an abandonment would result. And so it is indicated by the concluding paragraph of that opinion that the case is exceptional and is decided upon its own peculiar circumstances. There it is stated, page 396:

"Now, without in any way infringing upon any rule we have already laid down, but deciding this case as it stands, we are of the opinion that the equities are with the plaintiffs, Baumgardners, and that they still have a fair and just right to hold the exclusive possession of these premises for the time being and at this time, for the purpose of determining whether there is any oil in the land or not."

And at another part of the opinion, it is said:

"We think the better rule is to say that under this lease the parties have a right to abide, at least for some time, to see what the developments were in the vicinity around and about there."

If it had appeared that for several years (four or five, or six), upon adjoining lands, oil had been produced, we are of the opinion that the lessee would not have been excused from drilling and would not be permitted to retain his interest in the absence of drilling, simply because, while oil was found, it was deemed, by reason of the state of the oil market, that it would not be profitable to do the drilling. If it is not profitable, there is an easy escape for the oil driller—he may either confer the benefits of the royalty upon the landowner by drilling, or he may

surrender his interest in the land, but he has no right, when oil is found in considerable quantities, to decline to produce the oil for the benefit of the landowner because, in the condition of the oil market, it would not be profitable for the producer to do the drilling. He may do that, but if he does it he must surrender his interest in the premises.

And so, upon the last case, we find that the lease here was abandoned, and that at the commencement of this action the plaintiff was without title to the interest of the oil lessee, and that in consequence of that finding the decree must be for the defendant in the case. We find that the lease had been abandoned at the time of the commencement of the action.

---

## EXECUTORS AND ADMINISTRATORS—SETOFF.

Voorhees, McCarty and Winch, JJ.

[Fairfield (5th) Circuit Court, October Term, 1903.]

(Judge Winch of the Eighth Circuit sitting in place of Judge Donahue.)

JACOB CLAYPOOL ET AL. V. JOHN R. CLAYPOOL, ADMR.

1. PAYMENTS ON INSURANCE POLICY NOT SUBJECT OF SETOFF, WHEN.

In a proceeding brought by an executor under the statute (Sec. 6100 Rev. Stat.) in the probate court to have a claim on a promissory note allowed and ordered paid, payments made by an insured decedent on a policy of insurance assigned by him to the payee of the note, but which, by virtue of the statutes of descent and distribution (Sec. 4176 Rev. Stat.), inured to the benefit of the insured's estate, cannot be set off against the note.·

2. CLAIM FOR PAYMENTS MADE ON INSURANCE POLICY DISPOSED OF BY WILL.

A provision in a will, giving to the children of decedent's wife all interest that he had as distributee of her estate by virtue of Sec. 4176 Rev. Stat. in a policy of life insurance which he had assigned to her in her lifetime, without abatement on account of premiums paid by him thereon after her death, effectually disposes of any claim he may have had on account of such payments.

ERROR to the court of common pleas of Fairfield county.

C. W. McClery, for plaintiff.

C. D. Martin, M. A. Daugherty and George E. Martin, for defendants.

McCARTY, J.

This case arose in the probate court and was afterwards appealed to the court of common pleas. The proceeding in the probate court was brought under the statute (Sec. 6100 Rev. Stat.) for the allowance of a claim on a promissory note given by Isaac Claypool in his lifetime for the sum of $850 and interest in favor of Sarah A. Claypool, his wife, in her lifetime.