**In re GASOIL, INC., Debtor and Debtor-In-Possession.**

**Bankruptcy No. B85-02855.**

United States Bankruptcy Court, N.D. Ohio, E.D.

April 16, 1986.

Richard A. Baumgart, Dettelbach & Sicherman Co., L.P.A. and James M. LeMieux, Cleveland, Ohio, for movants.

Donald S. Scherzer, Alan M. Rauss and Darrell A. Fields, Kohrman, Jackson & Krantz, Cleveland, Ohio, for debtor, debtor-in-possession.

## MEMORANDUM OF OPINION AND ORDER

JOHN F. RAY, Jr., Chief Judge.

This matter came on for hearing on the motion of Donald Dietrich, Roger and Alice Prescott, Anthony and Naomi Schommer, Robert and Patsy Janson and Target Stables, Inc. (collectively the "Lessors"), for an order pursuant to 11 U.S.C. section 365(d)(4) determining that certain oil and gas leases with the debtor are terminated; or, in the alternative, to grant relief from stay or set a time to assume or reject those leases.

Debtor-in-possession, Gasoil, Inc., is engaged in the pumping of oil and gas on several parcels of land in Ohio. It is the lessee of the oil and gas leases with the above Lessors, although it disputes this with regard to the Dietrich and Target Stables leases. Each of these leases differs in particulars, but they all contain essentially the same provisions.

1. Each lease provides that the lessee is to pay to the lessor a royalty of one-eighth of all oil and gas removed from the wells, or one-eighth of the proceeds earned from the sale of the oil or gas.

2. Each lease ran for a period of years, usually ten years, called the "primary" term and "for so long thereafter as oil and gas is found in paying quantities." The Prescott lease ran for only one year.

3. The lessee was to pay a yearly rental amount if it did not drill for oil within one year; otherwise the lease terminated. The Prescott lease does not have this provision.

4. If after the oil and gas are found and none is pumped in one year, the lessee must pay the yearly rental. In two of the leases, lessee must make up any difference between the yearly rental and the royalty payments.

5. The lessee is given the power to inject oil, gas, brine or other fluids into the land in order to store or use them. In two of these leases, this right to store gas is allowed for payment of additional rent; in the others, it is part of the

consideration for the royalty payment. Since we only have one page of the Prescott lease, it is unclear whether this type of provision is a part of that lease.

6. In each lease, the royalty payments are to be made monthly.

These leases were entered into in 1964, with the Prescott lease being executed in 1970. It is undisputed by the parties that oil or gas was found on the properties, and that these agreements would be in force but for this bankruptcy proceeding. The debtor filed its petition on November 8, 1985. Neither it nor the debtor-in-possession has sought or obtained a court order to assume or reject these leases or extend the time to do so.

The question this Court is asked to determine is whether or not 11 U.S.C. section 365(d)(4) applies to oil and gas leases. Section 365(d)(4) provides:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

In its brief in opposition to this motion, debtor argues that: (a) these oil and gas leases are not interests in real property; (b) any interest they convey in real property is a fee interest and not a lease; and (c) any real property they might encumber is residential real property and, therefore, subsection 365(d)(4) does not apply. It further argues that these types of leases were not intended by Congress to be covered under this sub-section.

The Court first addresses Gasoil's contention that these oil and gas leases do not convey any lease interest in real property. While it is not exactly clear, debtor-in-possession appears to say this either because these agreements are sales of minerals

and, therefore, not a lease, or that the right given is in the nature of a license and thus not an interest in real property.

■ As to the second contention, section 365(m) provides: "For purposes of this section 365 and sections 541(b)(2) and 362(b)(9), leases of real property shall include any rental agreement to use real property." 11 U.S.C. § 365(m). It does not matter whether these oil and gas leases are viewed as licenses, granting only the right to go upon the land and search for oil (*see Back v. The Ohio Fuel Gas Co.*, 160 Ohio St. 81, 113 N.E.2d 865 [1953]), or as leases. For purposes of section 365, they are "leases" since they at least convey a right to use real property.

Gasoil's other claim, that these are sales of minerals, would remove these transactions from section 365, since they would not be "use[s] of real property." The Ohio Supreme Court has said:

To drill an oil well near the line of one's land, can not interfere with the legal rights of the owner of the adjoining lands, so long as all operations are confined to the lands upon which the well is drilled. Whatever gets into the well, belongs to the owner of the well, no matter where it came from. In such cases the well and its contents belong to the owner or lessee of the land, and no one can tell to a certainty from whence the oil, gas or water which enters the well came, and no legal right as to the same can be established or enforced by an adjoining land owner.

. . . .

Petroleum oil is a mineral, and while in the earth it is part of the realty, and should it move from place to place by percolation or otherwise, it forms part of that tract of land in which it tarries for the time being, and if it moves to the next adjoining tract, it becomes part and parcel of that tract; and it forms part of some tract, until it reaches a well and is raised to the surface, and then for the first time it becomes the subject of distinct ownership separate from the realty,

and becomes personal property, the property of the person into whose well it came. And this is so whether the oil moves, percolates, or exists in pools or deposits. In either event, it is property of, and belongs to the person who reaches it by means of a well, and severs it from the realty and converts it into personalty.

*Kelley v. The Ohio Oil Co.,* 57 Ohio St. 317, 327–28, 49 N.E. 399 (1897). *Accord Back, supra,* 160 Ohio St. at 88, 113 N.E.2d 865.

█ The interest of the landowner in the oil and gas is his right to drill a well and reduce the oil to possession. Although the oil or gas in the ground is deemed to be part of the realty (*see* Ohio Rev.Code § 1302.03[A] [UCC 2–107]), he is not deemed to be in possession of it as it lays in the ground. *See* 26 Ohio Jur.2d, *Gas and Oil,* § 8. The interest granted Gasoil is not the minerals, but the right to drill for them. Interests in oil and gas are not analogous to interests in solid minerals such as coal. While both are real property interests that may be conveyed separately from the surface rights, the interest of Gasoil remains a use of real property rather than a sale of minerals, because it cannot possess the oil or gas without pumping them out of the ground. What Gasoil has "bought" is the landowners' interest in the wellhead. *Detlor v. Holland,* 57 Ohio St. 492, 49 N.E. 690 (1898); *Herrington v. Wood,* 6 Ohio C.C. 326, 330 (1892). The interest of the landowner in oil and gas in Ohio is in the nature of a use of real property.

The issue then is whether this interest was conveyed in fee, or is in the form of a lease. Once oil and gas are found on the land (as here), the lessee's interest under the lease becomes a vested one in the land "and being vested may be called an es-

tate." *Tucker v. Watts,* 1 Ohio C.C. (n.s.) 589, 593 (1903).

Debtor-in-possession argues that this estate is a determinable fee, because it has no fixed term of operation.[1] It argues this because the leases here in question continue for so long as gas or oil is found in paying quantities. However, Ohio cases have said that this interest is a leasehold rather than a fee interest. *Acklin v. Waltermeir,* 19 Ohio C.C. 372, 379 (1899); *Jones v. Wood,* 9 Ohio C.C. 560 (1895). *See Harris v. The Ohio Oil Co.,* 57 Ohio St. 118, 48 N.E. 502 (1897); *Woodland Oil Co. v. Crawford,* 55 Ohio St. 161, 176, 44 N.E. 1093 (1896).

In *Acklin,* the court was concerned with whether a sheriff could levy against an oil and gas lease without going into possession of the land. In holding that he could do so, the court said:

> We regard this interest of the second party under this oil lease as being in the nature of a leasehold for years. It is for a term of five years, with an uncertain period to follow if oil and gas is found in paying quantities; but this uncertain period may be made certain by the effects of the venture. It is nevertheless but a term of years, and does not rise to the dignity of a freehold estate; and is but a chattel interest; . . . .

Thus, the lack of a definite term does not necessarily make this lease a determinable fee.

The documents evidencing these leases support the conclusion that they convey only a leasehold. The primary concern in determining the type of estate created by a document is the parties' intent. *Jones v. Wood, supra,* at 568. In *Jones,* the court held that only a leasehold interest was conveyed by an oil and gas lease where the lease used no words evidencing a grant of

---

1. In Ohio, a determinable fee, or fee simple determinable, "is created by an instrument providing that the estate shall automatically expire upon the happening of the stated event." 41 O.Jur.3d, *Estates, Powers, and Restraints on Alienation,* § 15. Until this qualified fee expires or is terminated, "it has the same characteristics as a fee simple absolute." The party holding this interest has all the rights and privileges of one holding in fee simple absolute. "He may even commit waste with impunity." *Id.* at § 16. "Where an estate is conveyed in fee for 'so long as' a specified use of the land continues, the words are appropriate to create a determinable fee." *Id.* at § 23.

the minerals in fee and required the lessee to remit one-eighth of all oil or gas pumped from the ground; had a primary term in which pumping was to commence in return for a rental payment and under which the lease would expire if no action were taken; and gave the lessee the right to terminate the agreement at will. 9 Ohio C.C. at 561.

These same provisions are in each of the leases at issue here. Each of the leases only gives the exclusive right to drill for oil and gas; there is no outright grant of the oil as it lays in the ground. Each gives a one-eighth royalty to the Lessors. The court in *Jones* said that a provision granting a one-eighth royalty to the landowner meant that the lessee had dominion over only seven-eighths of the oil and gas, and that this was inconsistent with a fee interest. *Jones, supra,* at 572. Finally, the leases here give the right to the lessee to terminate the arrangement at any time, or even to reduce the amount of land on which it will drill. Under *Jones,* this agreement does not create a determinable fee.

Other provisions of these agreements indicate that the parties did not intend to create a fee interest in these lands. In all of the agreements the royalty is to be paid monthly, and in any year where there is no production, the annual rental must be paid. This makes the agreement run in successive periods of one year. Thus, these agreements seem to be more in the nature of automatically renewing periodic tenancies than in the nature of determinable fees.

Finally, the provisions which allow storage of gas in the Lessors' land are rental agreements for the use of real property. *Rayl v. East Ohio Gas Co.,* 46 Ohio App.2d 167, 348 N.E.2d 385 (1973).

These agreements convey only leasehold interests in these lands. They are, therefore, leases of real property within the meaning of section 365(d)(4).

The third contention of Gasoil is that these leases are of residential real property and, therefore, they are not subject to section 365(d)(4). Debtor relies on *In re Independence Village,* 52 B.R. 715, 13 Bankr.

Ct.Dec. (CRR) 637, 640 (Bankr.E.D.Mich. 1985), where the court said that section 365(d)(4) applied only to leases of nonresidential real property, not nonresidential leases of real property.

At issue in *Independence Village* was a purported "lease agreement" with a state economic development corporation on a housing project for the elderly. After holding that the "lease agreement" was actually a sale and mortgage, the court went on to say that even if the agreement were a lease, it was not subject to section 365(d)(4), because the lease dealt with "property in which human beings reside." *Id.,* 52 B.R. at 722, 13 B.C.D. at 641.

■ There is no evidence before the Court as to whether anyone is residing on the parcels here in question. However, there is in each lease a requirement that no well be drilled closer than 200 feet to a residence. Even if these parcels do have people residing on them, Gasoil's use would not affect those portions where persons do reside. Unlike the situation in *Independence Village, supra,* these parcels are used both for residential and nonresidential purposes. Under Ohio law, the real property that Gasoil has leased is the landowner's right to drill for the oil or gas underneath his land. It is not a lease of the surface *per se,* and is not a lease of real property where human beings reside. Therefore, these leases are ones of nonresidential real property and are subject to section 365(d)(4).

Gasoil argues that it was not Congress' intent to have section 365(d)(4) apply to oil and gas leases. In support, it cites Senator Hatch's comments on the floor of the Senate indicating a concern with shopping center leases. Whatever the merits of this source as legislative history (*see Garcia v. United States,* 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472, 478, *reh. den.,* — U.S. ——, 105 S.Ct. 1235, 84 L.Ed.2d 371 [1985]), the question is not what Congress might have done; the question is what it has done. "Real property" covers a whole range of interests in real estate, a fact that

 

Congress must be presumed to have known when it enacted section 365(d)(4). Indeed, section 365(m), defining leases as "any ... use of real property," indicates that Congress was aware that there were many types of rental interests in real property, and intended them to be covered by section 365 no matter what their nature under state law. This Court concludes that oil and gas leases such as these are covered by section 365(d)(4).

■ Finally, Gasoil argues that it was not the assignee of two of the leases here in question. At the time of the hearing, debtor listed these two leases as obligations in its schedules. (It has since amended its schedules.) The only evidence that it was not the assignee of the two leases was the testimony of Ron Rang, Gasoil's title examiner, who stated that there was a recorded assignment to U.S. Gas and Oil[2] (a wholly owned subsidiary of the debtor) of the Dietrich and Target Stables leases. On cross-examination, Mr. Rang admitted that if there were an unrecorded assignment from U.S. Gas and Oil to Gasoil, he would not know of it. Later testimony by Richard Schreiber, President of Gasoil, stated that Gasoil was in the process of making a payment on the Target Stables lease. Given that Gasoil listed these leases as debts on its schedules, that the testimony of Mr. Rang is inconclusive on whether Gasoil or U.S. Gas and Oil is the present assignee of the Dietrich and Target Stables leases, and the testimony of Mr. Schreiber, the Court finds that these leases are with Gasoil. Because Gasoil has not assumed the leases or moved for an extension to do so within 60 days of filing its petition, these leases are deemed rejected. The motion of Donald Dietrich, Roger and Alice Prescott, Anthony and Naomi Schommer, Robert and Patsy Janson and Target Stables, Inc., for an order determining these oil and gas leases with the debt-

or, Gasoil, to be rejected pursuant to section 365(d)(4), is hereby granted.

IT IS SO ORDERED.

---

**2.** U.S. Gas and Oil filed for bankruptcy on February 7, 1986, the day after the hearing on this matter. If it were the assignee of these two leases, the 60–day limitation of section 365(d)(4) would not run until April. Because this Court holds that these leases belong to Gasoil, we need not consider the nature of the relationship between Gasoil and U.S. Gas and Oil.