Haynes, C. J.
(orally).
Before proceeding to the merits of the case, we desire to say that we have discussed at some length the question as to whether or not this case is rightfully before us. As a matter of course, no action could be taken at Chambers upon a mo *211 tion to dismiss the appeal. The only question that is properly before us is, whether we can proceed to hear the motion to suspend the order dissolving the interlocutory injunction, the objection being that the court had no jurisdiction of the appeal. We are of the opinion that the question is one about which there is a great deal of doubt, with quite a strong inclination on the part of some of us, to the conclusion that the case is one that is not appealable. The action is an action which is brought to enjoin the party defendant from entering upon a certain quantity of land. The land is held in separate parcels, or described in separate parcels, and held immediately by different sources of title. The action is in favor of one plaintiff, and against the same defendants as to all the land. And it seems to us, so far as we can see at present, that the case is one which may be properly brought in a single action; that is to say, that they are not separate causes of action.
The thing complained of is that, the plaintiff being the owner of some of those different tracts of land in fee and of others as lessee, the defendant is interrupting its possession without having taken the steps to appropriate a right of way across its premises, which, it says, consist of several hundred acres of land; the line of the proposed road being across that land, and about seven miles in length.
. The action being properly brought as one action — there being but this one cause of action, to-wit: the wrongful entering upon these lands — the injunction is prayed as a whole, and granted as a whole, restraining the defendant Company, from entering upon any portion of the lands described in the petition. Afterwards an application was made for a dissolution of the temporary injunction — praying’ that it may be vacated: and an order is taken in which it is provided and ordered, that as to certain tracts of this land the injunction shall be vacated, and as to certain other tracts it shall be continued ; and the question is whether this order is a vacation of the injunction within the terms of the statute, or whether it is a modification of the former order. It being claimed that, if it is an order vacating, an^appeal may be taken, but that, if it is an order modifying the former order, no appeal can be taken.
*212 It is claimed, upon the one side, that a “ modification ” simply extends to the limitation of the injunction before granted — to something less than the original grant — at the same time limiting it as to all of the subject matter of the action, and leaving it in force in part as to all of the subject matter of the action. On the other hand, it is claimed, where there is a vacation, dissolution of the injunction as to a part of the subject matter, of the action, that it is a vacation within the terms of the statute. We have not thought it necessary to take our time to further discuss this question, or to come to a definite conclusion in regard to it; but owing to the importance of the case, we concluded to proceed to the discussion of the main questions in the same, to see at what conclusions we should arrive in regard to the merits of the motion to suspend. We will therefore leave this question for further consideration as it shall arise hereafter-.
On the motion to suspend the order dissolving the injunction, we have heard testimony, and the testimony discloses this state of facts in connection with the pleadings: First,that the plaintiff Company owns three tracts of these lands in fee; that as to those tracts, the defendant denies that it had ever intended or had threatened to enter upon the lands without the consent of the plaintiff Company.
The testimony before us shows that it never had any such intention. Nevertheless, upon the testimony before the court below — and of course what that testimony was we have no official knowledge — the injunction as to those three pieces of land was continued, and that part of the case still remains in the Court of Common Pleas, and is not argued before us. As to the other parcels or tracks of land, the plaintiff Company has obtained certain rights from the owners of the land under what are denominated in common parlancejoil leases. They are instruments in writing, duly acknowledged, and delivered to different parties originally, but ultimately assigned to the present plaintiff. The general form' of those instruments is this: that the owner of the land grants to the supposed lessee the premises described in the lease for the purpose and with the exclusive right of boring and operating for petroleum and gas, together with the right-of-way over *213 said premises to the place of operating, the right to lay pipes, to convey water, oil and gas, and the right to remove, any of the machinery placed on said premises by the parties of the second part, with some other covenants in regard to taxes; and the alleged lessees agreeing to pay to the said party of the first part one-eighth part of all the oil produced or saved from the premises, and to deliver the same free of expense in tanks or pipe lines to the credit of the party of the first part; with the further proviso that if gas should be found in paying quantities, there should be a consideration in money paid per annum to the owner of the property, the lessor. Those leases are to run, some for one and some for five years, and as much longer as oil or gas is found in paying quantities upon the premises. Under these leases it is averred that the plaintiff Company has taken possession of the property, and has' proceeded to develop the land to some extent; that it has on some of the pieces already quite a number of oil wells, and that some of these oil wells — two of them, at least — are located within some seventy feet of the center line of the surveyed right-of-way of the railroad. It also avers that it has connected with some of these wells pipes running along the surface of the ground, for the purpose of conveying oil, and perhaps, also, for the purpose of conveying steam as a motive power to other wells. It claims further, that the lands in question are many of them heavily wooded or timbered, only a small portion being cleared, and that the use of this right-of-way by this defendant railroad for railroad purposes will endanger the operation of the wells which are situated near the line of the road; that there is a liability to fire from the sparks of the locomotives, and from the use of locomotives in passing by the wells, and also from the same cause to the forests situated upon their lands. It claims, also, that it will be an interruption of its right to cross the line of the proposed right-of-way, with pipes for conveying oil or gas, and also interrupt it in its right to proceed over different portions of this land in carrying its oil or machineiy, or any other heavy articles it may have to transport from one part of its land to another; it being averred that a portion of the lands are remote from the line of the ordinary road. They further aver that the defendant Company, acting under some *214 alleged rights they claim from the owners of the land, are proceeding to build said line of road without condemning or appropriating in proper form of law the right of the plaintiff in the premises, and without its consent in any manner of form ; and they therefore pray an injunction against the action of the defendant Company to such times as that it either shall settle with it, or have properly appropriated the right-of-way.
The answer of the defendant Company, while it admits that it has these leases, denies that plaintiff is in possession of the property — denies that it has exclusive right of possession — denies that it would be any injury to the use of the property by the plaintiff Company, or that it has any intention whatever to interfere in any manner or form with the rights that plaintiff may have under those leases, to bore or mine for oil or gas, or to take from the land all the gas or oil there may be under the surface, and use it for its own purposes.
Upon these genéral issues testimony has been offered pro and con. The testimony discloses that in one or two places there is a line of pipe across the railroad; that two of the tanks are near the line of the road, and two of the wells also; and that other wells have been sunk upon the premises and are in operation. It also shows that plaintiff demanded that the defendant should discontinue its work, and not go upon the property, at a certain time.
The defendants come in, and show that prior to the time that the notice was served upon them, they had entered upon these lands which are covered by these leases, in the construction of this road, under deeds that they had obtained for that purpose from the -owners of the fee of the land; that they had commenced their work on each of the pieces, and had carried it forward to some extent — -how far, we are unable to learn, because in that respect the testimony is indefinite and uncertain. The plaintiff offered testimony to show — from persons who have operated oil wells, and who claim to be familiar with the carrying on of the work — that the operation of the railroad near the oil wells, and near the tanks, will be dangerous to the safety of the wells, — dangerous to the operation of the wells — that there is very great liability to combustion from the passing of locomotives, and a consequent destruction of property of the plaintiffs.
*215 The testimony on the other side is, that railroads are operated daily near oil wells,.near oil tanks; that the pipes from, the oil wells cross railroad lines underneath the railroad, through the embankment; that they are in daily use, and that no injury whatever results to the oil wells, or to the tanks, from their proximity to the railroad; that the companies themselves who own these oil wells, construct their factories, 'and sink their wells in the immediate neighborhood of the railroad already in operation and running.
These are the substance of the facts that have been offered before us, and the question arises as to the respective rights of these parties.
It is claimed on the part of the plaintiff Company that it has such an interest in this land — that its rights are so jeopardized, are so taken, within the meaning of the statutes, and of the constitution of the state of Ohio, that the defendant may not enter upon the lands, although the defendant Company has the right granted to them by the owner of the fee, for the purpose of maintaing or operating this railroad, without obtaining the consent of the plaintiff Company, or without appropriating these rights in the manner pointed out by the statute. This is denied to a certain extent by the defendant Company, and it is claimed that the plaintiff really has no actual interest in the land as such; that at most the right that it has, is simply an incorporeal hereditament personal to the lessee, and is in the nature of personal property, and is such that it is in no manner compelled to appropriate it; that plaintiff has no interest, in fact, whatever, as against the defendant Company.
We have carefully examined such authorities as have been placed before us, and such as are accessible to us, upon this question. Of course, it is to some extent a new question, and the authorities cited are mainly to be found in Pennsylvania cases. We have arrived at the conclusion that the right of the plaintiff Company under these leases is in the nature of an incorporeal hereditament; that, strictly speaking, it is not a right in the land as such, but a right to enter upon the land, to sink its wells, and to take from underneath the soil such oil as it may find — to take it from the land and *216 to render a portion of it to the land owner, the remainder to become its own to dispose of as it sees fit. Nevertheless, as we have had occasion to hold heretofore, the plaintiff has upon that laud a right of property that is valuable — a right that is to be protected, and a right that belongs to it — so long as it conforms to the terms under which it holds. That branch of the question has been discussed before us in Wood county, in cases we have had there in regard to the forfeiture of the rights of the alleged lessees. And we have uniformly held as we now hold. This right, as thus defined, has,' been defined only under this class of leases; because it is to be born in mind that there is the class of leases set up here, and there is another class of leases, as in the mining of coal, that really confer a right in the soil, or the mineral under the soil — which convey in fact the soil or the mineral itself; but they are of very different form from this class of leases. Now these leases, it is true, let and grant to the alleged lessee premises, but they grant them for a specific and definite purpose, to-wit: to enter upon the premises, to sink wells for oil or gas, to take that oil or gas away, and to maintain such structures as may be necessary for the proper mining or extracting of those substances from the earth, with the right to pass through to these places where they are operated, and with the right to convey their products to such points as it may be necessary to transport them'. In general terms, there is reserved to the grantor a right to carry on his farm for agricultural purposes; but we take it that the true construction of this class of leases is, that the alleged lessee is to be confined, in general terms, to those rights which are granted to him within the lease, and that the rest are practically reserved to the owner of the premises.
Now, if this view of the law be correct, the question is, under appropriation proceedings, what rights this plaintiff Company has which are to be reached or disposed of, or appropriated. First, there are a class of pipes that already cross the railroad track. Those the plaintiff has\ right to operate, keep and maintain, and its rights are superior to any rights that now obtain to the defendant Company; because they are obtained from the owner of the land, and are prior, in point *217 of time, to the grant of the right-of-way of the defendant Company. And the defendant Company of course has no right to remove those pipes, or injure them, or destroy them. The testimony shows, and shows without contradiction, that prior to the time when this suit was brought, the defendant Company, through its proper officers and agents, had offered to protect all those pipes which were crossing the line of the road, and to give to the Company a right to lay all pipes necessary across the line of the road, and to preserve and protect them at the expense of the defendant Company. That offer was not accepted — presumably because the plaintiff was claiming at that time that there were greater injuries to be inflicted upon it, which they had a right to be compensated for. So that, taking those pipes alone, we see no reason why any injunction should be granted to preserve the right of the defendant Company. We have no doubt but that it can not only maintain the pipes it already haa, but that it may cross the line of this right-of-way with pipes that it may use hereafter, either by conveying under the line of track, or over it. Its rights are first in point of time, and in that respect superior to the rights which have been granted to the railroad company. It is claimed at this point that those pipes cannot be conveyed through the land, because they have to be encased in boxes, as some of them contain steam, which, it is said, will be suddenly condensed if conveyed through the earth; but if it is necessary to carry them above the surfaceof the earth, theycan be carried above the line of the road,and yet give to the defendant Company its proper right-of-way to its cars and locomotives. The testimony in regard to the laying of these pipes is that oil companies do, in the crossing of the line of the Findlay road, carry at least oil through the embankment, and in such use pipes have been placed across the road by the companies operating the oil wells for their own use, by the consent of the owners of this railroad,' being compelled to pay to the railroad company a sum for the privilege of so carrying their pipes.
In regard to the tanks that are built near the road, it will be sufficient to say, .for the purpose of this case, that the testimony, so far as it is disclosed here, shows that there is not *218 that danger in the use of these oil tanks for the storing of oil in them at the distance that they are placed from the road, as is apprehended by plaintiff. The oil coinpanies themselves do build these tanks near the lines of railroads, and do use them without any serious danger to themselves.
Perhaps it would not be improper to say that the plaintiff Company, having already built its tanks near the road, has the right to have and maintain them there; but there is this matter to be distinguished in regard to the rights of the respective parties, also, as the authorities show': the presumption is that the railroad company is to be operated in a proper manner. Its locomotives are to have at least the ordinary precautions for the protection of the adjoining property from fires; its furnaces are to be so covered and protected as to at least use all reasonable and ordinary precaution to protect the adjoining property from danger of fire, and in the appropriation of property the injuries which would be liable to arise from the negligent use of the railroad by the railroad company would not be taken into consideration, only those being considered which arise necessarily from the careful, prudent management and operation of the line of railroad and its locomotives.
In the use of the remainder of the land — the right to build tanks hereafter; the right to bore wells for oil, we ourselves do not see any of the dangers to the plaintiff Company that are apprehended by it. We can not see from the testimony that there is any necessity of having this strip of land occupied by the railroad, for the purposes of sinking the wells .and developing the oil. There is abundant opportunity to do all that is desirable to be done in that direction, in the remaining portion of the land. Any apprehended dangers in the ordinary use of the road which may arise to the Company from the use of the oil wells or oil tanks, or the operating of the wells hereafter, are matters that it seems to us would be very remote in the consideration of the question before a jury in a court where it was sought to appropriate the property.
There is another thing that we should state, so far as the granting of this application is concerned : we are unable to discover by the reading of the affidavits, where the pipes *219 which cross the track are located — whether upon the leased land, or upon the land which the parties own in fee. And the same may be said also with regard to the two oil tanks; we are unable to discover whether they are upon the leased lands, or upon the part which is owned in fee.
Asher Oook, J. O. Troup, for plaintiff.
H. H. Dodge, Hamilton & Ford, for defendants.
There is another thing in regard to the granting of this injunction which ought to be borne in mind, and which is this : If we should, by this act, compel this railroad company to go into court to condemn or appropriate a supposed interest in this plaintiff Company, that it would be compelled by the terms of the statute, in such a proceeding to aver in the court that the plaintiff Company had a property interest there; that plaintiff owned the land, or an interest in the land, which defendant sought to appropriate. It would be obliged to recognize that — the very fact which it denies — and allow a discussion there, and a decision, upon the questions which it itself was denying, and which the defendant could turn around and say to it, “you admit by the very fact that you come into this court, that we have a right of property there, which you ought to pay for.” And we think that that should have an influence upon a court of equity upon suspending the order, and that the court should not compel the defendant to make appropriation unless the court is clearly of the opinion that there is a right of property there, which the railroad should appropriate before it proceeds any further.
We come to the conclusion that the owners of the land — notwithstanding the leases — had the right to grant to the defendant Company permission to locate and maintain its road across the lands in question; that no land is taken from the plaintiff Company, and that no other property rights are interfered with requiring, for reasons already stated, any proceedings of appropriation.
The application for an order suspending the order made in reference to the injunction by the judge of the Court of Common Pleas, is therefore refused.