## ADJUSTMENT OF EQUITIES UNDER AN OIL LEASE.

Circuit Court of Wood County.

GEORGE HOLLISTER v. T. J. VANDERGRIFT ET AL.

Decided, October 29, 1892.

*Oil and Gas—Delay in Completing Well Before Expiration of Extended Term—Not Excused by Accident to Apparatus—Lessor May Treat the Lease as Terminated—Adjustment of Equities in Connection with Uncompleted Well.*

1. At the expiration of an oil and gas contract for a term of three years, with a provision for its extension so long as gas and oil should be produced in paying quantities, the lessees upon consideration were granted an extension of one more year but failed to commence drilling the first well until within seven days of the end of the extended term, and it was impossible to complete the well during that time. *Held:* That the fact that the lessees made an arrangement with a contractor to commence drilling in sufficient time to complete the well before the expiration of the extended term, but on account of an accident to his apparatus he was compelled to disappoint them and it became necessary to contract with another operator who was unable to begin drilling until too late to finish a well before the term expired, was not a sufficient excuse for the delay, and the owner had a right to treat the contract as at an end.

2. A court of equity, in a suit to enjoin further operations and to quiet the title of the lessor to premises under an expired oil and gas lease and extension thereof, will grant the relief sought; but where the lessees have made an effort to complete a first well within the term, and have met with delay but not of an excusable character which would extend the lease, equity will permit the completion of the well for the purpose of ascertaining the results of the work, and will apportion the cost between the parties.

*B. F. James* and *Edward Beverstock, Parker & Moore,* for plaintiff.

*Doyle, Scott & Lewis,* contra.

SCRIBNER, J.; BENTLEY, J., and HAYNES, J., concur.

Appeal from Wood Common Pleas Court.

This is the case of George Hollister vs T. J. Vandergrift et al. The substantial parties to this controversy are the plaintiff, George Hollister, and the defendant, the Northwestern Ohio Natural Gas Company.

It appears by the pleadings and proof in this case that on July 12, 1886, the plaintiff and the defendant, T. J. Vandergrift, entered into an agreement in writing, commonly called a gas and oil contract, a copy of which is contained in the petition in this case. By this agreement the plaintiff granted, demised and let unto Vandergrift and his heirs and assigns for the purpose, and with the exclusive right of drilling and operating for petroleum and gas, all that certain tract of land described in the lease containing 160 acres of land situate in Wood county.

It was provided by this contract that the party of the second part, his heirs and assigns, are to have and to hold the said premises for the term of three years from the date hereof and as much longer as oil or gas is produced or found in paying quantities thereon. In consideration of said grant and demise, the said party of the second part agrees to give or pay to the party of the first part, the full equal one-eighth part of all the petroleum or rock oil produced or found on said premises, and to deliver the same, free of expense, into tanks or pipe lines to the credit of the first party—to the lessor, Hollister—and should gas be found in sufficient quantities to justify marketing, the consideration in full shall be $300 per annum for the gas from each well so long as it shall be sold therefrom. Now here comes a very material provision in this contract:

"It is further agreed that the party of the second part shall complete a well on the above described premises within six months from the date hereof, and in case of failure to complete such well within such time, the party of the second part agrees to pay to the party of the first part for such delay a yearly rental of $1.00 per acre on the premises herein leased from the time of completing such well as above specified, until such well shall be completed, the said yearly rental amounting to one hundred and sixty dollars shall be deposited to the credit of the first party in the Farmer's National Bank of Findlay, or be paid direct to said first party. And a failure to complete such

well or make such deposit or payment as above mentioned, shall render this lease null and void and to remain without effect between the parties hereto.''

Then there are some reservations, not material, and the further provisions that all the conditions between the parties to the agreement shall extend to their heirs, executors and assigns.

This lease, by its terms, it will be perceived extended from July 12, 1886, to July 12, 1889.

It seems nothing was done under it by either party until May 23, 1889, something less than two months from the date when it would have expired by its terms and conditions unless gas or oil should be found in paying quantities on the premises within that time.

On May 23, 1889, this arrangement was entered into:

''For and in consideration of the sum of four hundred dollars to me in hand paid, covering all back rental also the advance rental in full on my farm of 160 acres in section twenty, Portage township, Wood county, Ohio, and which was leased to T. J. Vandergrift, July 12, 1886, the receipt whereof I hereby acknowledge, I hereby extend the term of said lease from one year ending July 12, 1890. In witness whereof I hereby set my hand and seal on this twenty-third day of May, 1889.'' Signed, ''George Hollister.'' There is a certificate of acknowledgment attached to this.

The Northwestern Ohio Natural Gas Company became the owner of this contract. Matters remained in *statu quo* until about June 17, 1890, when the lessee or grantee of the rights provided for under this agreement, gave orders to its employes to proceed with the work of drilling on these premises. Orders were issued to erect a derrick and to make the usual and necessary provisions for prosecuting the work of drilling.

Some time between the seventeenth of June and fifth of July the derrick was erected and lines were laid for furnishing a supply of fuel in order that the operations necessary might be prosecuted. Work was actually commenced—the work of drilling or ''spudding'' as it is termed, on the fifth of July, seven days before the expiration of the term provided for in the lease as extended by arrangement of May 23, 1889.

This work was prosecuted with considerable energy until July 14, 1889, when the plaintiff, Hollister, brought this action to restrain further proceedings under the lease, alleging that he was the owner of these premises; that the time within which work was to be commenced and prosecuted had expired; that no oil or gas had been found by the lessee, the Northwestern Ohio Natural Gas Company, and that in violation of the rights of the plaintiff they were proceeding to drill upon the premises in search of oil or gas; and in substance he prayed the court to quiet his title in these lands and to enjoin the defendants or the Northwestern Ohio Natural Gas Company from further entering, trespassing or proceeding with the work upon which they had entered.

The lease under the terms of the extension terminated on the twelfth of July; that occurred on Saturday. The plaintiff is a non-resident of the county and was residing during the time covered by this contract about one hundred miles or more from the county of Wood where the lands are located.

About noon on the eleventh of July, according to his testimony, he first learned that the defendant, the gas company, was drilling upon his premises. The suit was commenced on Monday, the fourteenth, following. According to his sworn testimony he had no notice whatever that the defendant was proceeding with his work until about noon Friday, the eleventh. It seems there were men engaged in removing timber from the place, and had been so engaged for some time prior to the commencement of this work under a contract, by the terms of which they became the purchasers of the timber. This contract, as testified to by the plaintiff, would not constitute the contractees as agents or tenants so as to charge him with notice of any knowledge on their part. Whether you regard it as established in this case by the evidence that the plaintiff had no knowledge of the proceedings complained of until Friday, the eleventh of July, the lease terminating by its term on the next day, and the action having been commenced and the papers prepared and the action commenced on the following Monday, and the lease by its terms not expiring until midnight, it can hardly be charged against the plaint-

iff that he was guilty of laches in ascertaining his rights, whatever they may be under this contract.

It is shown on the part of the defendant, the gas company, as I have stated, that they had given orders to erect this derrick and proceed with this work as early as the seventeenth of June, and if these orders had been regarded and the work prosecuted from that time forward, there seems to be no reasonable doubt but that the work of drilling this one well would have been completed within the specified time, and these parties advised whether oil or gas could be found in that particular locality. It seems from the testimony that the party upon whom they relied for doing their drilling was not an employe of the company, but a contractor who met with some misfortune in having his drilling tools caught and become fast in a well which he was engaged upon, and they were obliged to make arrangements for drilling with another party, and that other party was not able to get around to work until about the fifth of July.

Now as we have held and has been announced this morning in the case that has just been decided, *Miller* v. *Vandergrift,* 12 C. C.—N. S., 475, as we construe these instruments they are to be regarded as sales of the substances of oil underneath the surface of the earth—of the oil or gas that may be found thereunder. The lessee becomes the purchaser of all these substances. As a part of the contract, he is licensed to enter and remove these substances and make return to the owner of the land for a certain proportion of the land thereof. This right to remove these substances expires ordinarily with the period limited by the terms of the contract (in this case it was to be three years and in many cases as stipulated in these contracts it would be five years), the time granted for the removal of the oil and gas expires at the time named in the leases, unless within that time oil or gas is found in paying quantities. In that event, as we understand these agreements, the lessee or purchaser of the oil or gas has the time extended for removing the oil or gas so long as it shall be found there in such paying quantities as would justify the marketing of it.

Now according to the strict terms of this contract, according to the strict legal rights of these parties, this plaintiff has the

right to treat the lease as having expired at the end of the period of extension. While it may be true that had this work been prosecuted with due and reasonable diligence from the seventeenth of June, that the test would have been made before the expiration of the extended period, before July 12, 1890, yet we do not think the reasons given for the delay are entirely sufficient to excuse the delay.

It may be that men were not to be had; it may be that work was being done to such an extent in that region as alleged, that it was difficult if not nearly impossible to employ men; and it is probable that if the accident had not occurred to the man who was contracted with to do this work, that the work would have been successfully prosecuted within the proper period; but nevertheless, we do not think that either of these misfortunes are of such a character as to excuse the defendant company from the non-performance of its contract within the period stipulated, and to be brief, our final conclusion in this regard is that we are of the opinion that as to all this territory, except that immediately adjacent to this well, the plaintiff is entitled to the injunction prayed for, and as to the land on which this particular well in question is being drilled, while according to the strict legal rights of the parties under the terms and conditions of this contract it would appear that the defendant is justified for the delay and for the status of the work, nevertheless, inasmuch as the plaintiff had apealed to us as a court of equity to interfere in his behalf, and is here standing upon his strict legal rights under the exact terms of this contract, we are disposed to say to him and to hold that we will give him his decree as to the lands not occupied by this well; but as to that particular portion of this territory we will extend the time for a short period to enable the defendant, if he chooses, to prosecute the work with a view of ascertaining what may be the result.

In so doing, we simply exercise the power which we have as a court of equity not to refuse relief unless it be shown that some equitable consideration shall be extended to the party who is being proceeded against, namely here, the Northwestern Ohio Natural Gas Company. It would seem, for example, if a man had bought timber, upon certain premises, or stone, and was en-

gaged in the act of removing it at the hour when the period
stipulated for within which the timber or stone was to be re-
moved, and he had not quite gotten off his timber or stone, and
the owner of the land should come into court and ask equitable
relief, that the court in granting it would do so upon some condi-
tion such as we have in this case.

The decree will be that the plaintiff shall be quieted in his
title as to all his lands except one acre or thereabouts imme-
diately adjacent to this well as being drilled. As to that the de-
fendant shall have a period of twenty days from the entering
of this decree in which to complete the well. The plaintiff shall
pay one-third of the costs and the defendant two-thirds of the
same.

For this extension, the defendant, the gas company, shall pay
as further compensation the sum of $20. Our recollection of
the testimony being that the year's compensation was $240, the
defendant to be permitted within this period of twenty days to
ascertain whether gas or oil shall be found in paying quantities
in the region where the well is being drilled; in case that it shall
be found, then the defendant shall be permitted to proceed with
the work of extracting and disposing of the oil or gas according
to the terms of the contract, and to have such facilities in remov-
ing it as are ordinarily used in such cases.