RAYL ET AL., APPELLANTS, *v.* EAST OHIO GAS COMPANY
ET AL., APPELLEES. ■

(No. 7141—Decided August 8, 1973.)

*Mr. Bernard J. Amer,* for appellants.
*Mr. John M. Glenn* and *Mr. Benton Bassett,* for appellees.

MAHONEY, J. On August 10, 1928, the predecessors in title to land owned by plaintiffs, the appellants herein, situated in section 31 of Green Township, Summit County, executed and delivered to the defendant, East Ohio Gas Co. (an appellee), an oil and gas lease for the primary term of five years, and "so much longer as oil or gas * * * is or are

found on said premises in paying quantities in the judgment of the lessee * *.*."

The lease gave East Ohio Gas the right to drill, extract, and operate oil wells, etc., and lay pipe, etc., for a minimum annual rent of $165 ($1 per acre). If a well was drilled and oil found, a "one-eighth" royalty was to be paid, with a greater royalty for greater quantities marketed and used off the premises.

In 1933, prior to the expiration of the primary term of the lease, East Ohio Gas well No. 1312 was drilled, and gas produced. Thereafter, a $200 royalty was paid quarterly. In 1936, East Ohio Gas well No. 1376 was completed, gas was produced, and thereafter a royalty was paid quarterly.

In 1948, the predecessors in title to the plaintiffs executed and delivered to East Ohio Gas a written document labeled "Supplemental Gas Storage Agreement." The agreement was not signed by East Ohio Gas. It recites a beginning date of September 1, 1948, but the notarial acknowledgments are dated September 28, 1948, and December 18, 1948.

This agreement, for a consideration of $1, purports to modify and extend the 1928 lease by granting the additional right of " * * * introducing, injecting, storing and removing gas of any kind, including gas now or at any time hereafter lying under said premises, either through wells now located or hereafter drilled upon said premises or through wells located upon any other premises within the so-called Clinton Sands area * * * [and] to drill as it may elect * * * and to install and maintain * * * such additional equipment and pipe lines * * * as may be necessary * * *."

The agreement was alleged to be for a primary term of ten years "and so much longer either (1) as gas is being produced, stored, withdrawn, or held in storage by the lessee, in the sub-surface sands * * * or (2) as oil is found on said premises, or gas is found in sub-surface formations * * * in paying quantities in the judgment of lessee * * *." This agreement also provided for payments of $200 per year per well, payable quarterly, and, in lieu thereof, oil

and gas royalties, if oil or gas was produced and marketed.

Wells numbers 1312 and 1376 were "shut in" on August 2, 1948, but not "plugged." They were converted to storage use on August 1, 1949. Thereafter, wells 2164 and 2165 were drilled, in 1960, for storage purposes. In 1965, a settlement was reached and releases were executed by plaintiffs and East Ohio Gas for damages caused on the premises by East Ohio Gas up to March 25, 1965. In 1971, storage well No. 2547 was drilled.

From and after 1948, every quarterly payment was made on every well until November 2, 1972, when the plaintiffs refused tendered payments. East Ohio Gas has continuously, since 1949, used the wells for the injection, storage and withdrawal of gas produced elsewhere, and transported to plaintiffs' property, or other property in the Clinton Sands area, by pipe and injection into the subterranean sands and caverns.

Plaintiffs commenced this action on July 30, 1971, seeking relief, as follows:

(1) A declaratory judgment that the lease of 1928 was terminated.

(2) A declaratory judgment that the storage agreement was void and, if it was not void, that it terminated on September 1, 1958.

(3) A finding that East Ohio Gas Company's use of the land since that date is a trespass and nuisance, and that the plaintiffs ought to recover damages therefor.

(4) To enjoin the East Ohio Gas Company from further activity on plaintiffs' premises, and order the removal of equipment, etc.

East Ohio Gas answered, asserting the validity of both agreements, and claiming that the plaintiffs are estopped by reason of their acceptance of the rents, and that the company relied, to its detriment, on such acceptance and prior agreements. Its other defenses are: (1) a lack of necessary parties plaintiff; (2) the statute of limitations; (3) and the release executed on March 25, 1965 as to the claimed damages.

The matter was submitted to this court upon the

pleadings, interrogatories and answers thereto, exhibits, and a transcript of proceedings. This transcript, supposedly, was to be an agreed statement of facts, but it contains a maze of opening statements, opinions, some testimony, closing arguments, and the trial judge's opinion that: "I have to honor this supplemental gas storage agreement based on what has been told to this court * * *."

The plaintiffs orally requested separate findings of fact and conclusions of law. The court, thereafter, found, in addition to the facts stated above, that the first two oil wells were never abandoned, and that, in reliance on the storage agreement, East Ohio Gas drilled three more wells. The court's conclusions of law were that the two agreements are "valid and subsisting agreements conveying an interest in the land * * *" and that the plaintiffs are estopped to deny their validity by reason of their acceptance of payments. A judgment was entered in favor of the defendant. The plaintiffs claim that the judgment is contrary to law and against the manifest weight of the evidence.

The chief questions before us relate to the interpretation that should be placed on the supplemental gas storage agreement proviso, which reads:

"To have and to hold the said oil and gas lease * * * for a term of ten years, and so much longer * * * as gas is being produced, stored, withdrawn, or held in storage * * * in the sub-surface sands * * *."

First, is the agreement to be treated as an ordinary contractual lease, or as an oil and gas lease? Second, should the court extend protection to the "locator or discoverer" as it has on occasion in the past?

In the early days of mining and drilling explorations, a body of law developed peculiar to those operations. One of these was a principle called the "locator or discoverer's right." Under this principle, the law protected the locator and discoverer, so that when he expended large sums of money for exploration and drilling, he was afforded protection against the property owner, the government or third parties for his discoveries by giving him the right to mine or drill, and to produce and market those minerals that he found during his exploration.

This principle found its way into the oil and gas leases and eventually raised reciprocal implied covenants by the lessee. These were the duties to explore, drill, produce and market the product just as any "reasonably prudent operator" would do under the circumstances. The courts did grant forfeitures for failure to operate or develop prudently where there was an express covenant in the lease. This body of law provided that uncertainties in leases were ordinarily resolved in favor of lessors. Thus, the law required the lessee-operator to perform prudently or his "discoverer's rights" would be cut off. Each side benefited as each had a duty, and the royalty of one-eighth was fair to both sides.

East Ohio Gas urges that the same circumstances still exist, and that the same principle should be applied to gas storage agreements. It urges the necessity of protecting the large investments of the gas companies, and points to the general public's benefit of having an ample supply of gas for fuel during the winter months.

Let us, therefore, compare the two types of agreements. The oil and gas lease provided for minimum rentals, plus royalties in the event that oil or gas was produced in greater quantities. Oil royalties could rise or fall with production and the value of the dollar. Gas royalties were governed strictly by quantities. However, in the storage agreement, the rental payment of $200 per year per well remained constant, regardless of the quantity of gas stored.

The oil and gas lease, which provides "for a term of five years *and so much longer as oil or gas * * * [is found] in paying quantities * * *"* is essentially a bilateral contract in which the lessors are required to permit the continued production, but the lessee is required to operate in a prudent manner. On the other hand, the storage lease is actually unilateral, after the primary term, as the lessors are required to accept the lessee's actions on lessors' premises. The lessee has no obligation to inject and store gas. (Emphasis supplied.)

The bilateral oil and gas lease was enforceable against either party. The lessors could obtain a forfeiture of the lessee's rights, if it failed to operate prudently. In contrast,

there is the storage agreement which only the lessee could enforce after the primary term.

The usual oil and gas lease was ordinarily terminable beyond the primary term, when the oil and gas were no longer produced in paying quantities, or by forfeiture by operation of law. It was terminable by contingency or operation of the law and not at the will of either party. However, the storage agreement, in the instant case, could be terminated at any time by the lessee by simply withdrawing all the gas and stopping payments.

The main difference is that an oil and gas lease is an exploitation of the minerals under the surface of an owner's land. The storage agreement is simply a rental agreement for the use of the lessor's land. The former involves expenditures of great sums of money on a gamble that oil or gas would be found, and the law, therefore protects the investing discoverer. In the latter situation, there is no element of risk, as the lessee is well aware of the amount he can store and control his expenditures.

We, therefore, must conclude that the same circumstances and conditions do not exist as to warrant the extension of the oil and gas "locator or discoverer's rights" principle to gas storage agreements. Does the public necessity for an ample supply of gas justify the extension of the principle? We do not think so. The legislature has recognized the public necessity by granting the right of eminent domain to gas companies for storage purposes under certain conditions. This prevents the deprivation of property without due process of law. If we were to force this lease upon the lessors for that reason alone, it would be an appropriation of property without due process of law.

The question then becomes: what kind of a lease is the supplemental gas storage agreement in this case? We use the term "lease" loosely, because oil and gas agreements have been characterized as leases, licenses, corporeal hereditaments, rights, easements, and/or interests in real estate.

We note that this lease, beyond its primary term, is not definite and certain. The contingency controlling the term is regulated exclusively by the lessee, East Ohio Gas Com-

pany. The term, therefore, is determined by the will of the lessee, who is under no obligation to inject and store gas.

Under the common law, a tenancy at the will of one party is also a tenancy at the will of the other. This rule has been recognized by the Supreme Court in *Brown* v. *Fowler*; 65 Ohio St. 507, at 523. This common law doctrine has been approved by the majority of courts in this country. See: annotation, 137 A. L. R. 366, Subdivision III, "Option of One Party to Terminate Lease"; 51C Corpus Juris Secundum 473, Landlord and Tenant, Section 167; and 32 American Jurisprudence 81, Landlord and Tenant, Sections 66 and 67. The rule has also been followed by this court in the case of *Freedline* v. *Cielensky*; 115 Ohio App. 138.

We are aware that the court, in *Brown* v. *Fowler*; *supra*, did not find a tenancy at will. There, the court treated a surrender clause as a condition subsequent during the primary term, and simply terminated the tenancy for failure to drill and develop within the primary term of two years.

Moreover, we are cognizant of the view held by the text writers (such as 1 Tiffany, Real Property, Section 159 [3d ed. 1939]; and 2 Summers, Oil and Gas, Section 235 [1959]), that American courts have been misled by a dictum in Lord Coke's commentary on Littleton (Co. Litt. 55 A). However, the fact remains that the principle was adopted by Kent and Blackstone, and is now followed by the majority of American courts. This "error" in Coke's commentary was set forth in the case of *Gas Co.* v. *Eckert*; 70 Ohio St. 127.

The case of *Gas Co.* v. *Eckert* is readily distinguishable from the case at issue, as well as other oil and gas leases. It involved what was generally referred to, around the turn of the century, as a "no-term" lease. Courts generally read into such a lease an implied condition that the developer could not indefinitely postpone the development or drilling by the payment of annual delay rents. (2 Summers, *supra* at Section 10.) We think it fair to assume that the court in *Gas Co.* v. *Eckert* found that the developer had not

unreasonably delayed exploration and it, therefore, denied the lessor's request to cancel the lease.

Additionally, as we have already indicated, there is no reason to treat the storage agreement as an oil and gas lease. It does not involve any grant of oil, gas, or minerals. It is simply a rental of land. As such, there is no reason to treat it other than as an ordinary contractual lease. It is at the will of the lessee and, therefore, it is likewise at the will of the lessors.

East Ohio Gas argues that even if it is considered a tenancy at will, the plaintiffs should be estopped to terminate the tenancy, since the court found that East Ohio Gas, in reliance on the agreement, constructed three wells and laid and installed equipment. However, an examination of the proceedings fails to disclose sufficient facts, as a matter of law, from which the court could find that an estoppel should be imposed, and, thus, the trial court erred. (We note that East Ohio Gas concurs with the finding of this court regarding estoppel.)

We find, from the record, that the trial court also erred in finding against the plaintiffs on the questions relating to damage and trespass. While the release would properly exclude claims prior to its execution, the plaintiffs (lessors) certainly had the right to offer evidence of damage since that time, as to wells numbers 2164, 2165, and 2547, and, of course, subject to the statute of limitations.

We, therefore, conclude that the supplemental gas storage agreement, executed in 1948, was a valid and subsisting contract which, beyond the primary term, was terminable at the will of the lessors or lessee, and that it was terminated by the lessors' refusal to accept rents as of November 1, 1972, unless the lessors should be estopped from asserting that right. This question should be determined by a trial on the merits of lessee's defense of estoppel.

*Judgment accordingly.*

BRENNEMAN, P. J., and VICTOR, J., concur.