## In re FREDERICK PETROLEUM CORPORATION Debtor.

No. C–2–88–153.
Bankruptcy No. 2–85–0741.

United States District Court,
S.D. Ohio, E.D.

April 13, 1989.

See also, Bkrtcy., 92 B.R. 273.

James S. Huggins, Marietta, Ohio, for appellant.

Timothy B. Matthews, Kevin E. Irwin, Cincinnati, Ohio, for appellee.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

This is an appeal from an order of the United States Bankruptcy Court entered on November 2, 1987. The issue presented by this appeal is whether oil and gas leases

held by Frederick Petroleum Corporation ("Debtor") were subject to the provisions of 11 U.S.C. § 365(d)(4).

On May 11, 1987, a motion was filed on behalf of James and Judy Dennis, Helen Dennis, Frank and Nancy Donia and Textron Oil Corporation for relief pursuant to 11 U.S.C. §§ 362(a) and (d), 365(d)(4) and 554(b). The named individuals are the landowners and lessors of the property subject to the leases in which Debtor held an interest. Textron Oil Corporation joined in the motion to assure that leases which it had obtained from the above landowners would be valid. SEOR, Inc., appellant herein, and Paul V. Jones, Trustee, objected to the relief sought by movants. Appellant professed to have standing to object by reason of its status as a creditor of the Debtor. On November 2, 1987, the bankruptcy court issued a decision holding that the oil and gas leases in question were subject to the provisions of § 365(d)(4), and that since neither the trustee nor Debtor had acted to assume or reject the leases within the sixty day limit, the leases were deemed rejected. The bankruptcy court further found that the James and Judy Dennis lease had expired under Ohio law for lack of production. The bankruptcy court did not address the other grounds for relief advanced by movants. Appellant now appeals the holding of the bankruptcy court in regard to the Helen Dennis lease and the Frank and Nancy Donia lease (formerly the John B. and Joan T. Jenkins lease).

Under 11 U.S.C. § 365(a), the trustee may assume or reject any unexpired lease of the Debtor. In addition, 11 U.S.C. § 365(d)(4), provides as follows:

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

For purposes of § 365(d)(4), "leases of real property shall include any rental agreement to use real property." 11 U.S.C. § 365(m).

Under § 365(d)(4) and § 365(m), the lease must be a *bona fide* lease, that is, a lease because of the economic substance of the transaction, not simply because it is labeled a "lease." *See In re PCH Associates*, 804 F.2d 193 (2d Cir.1986). Whether an agreement or transaction constitutes a lease or rental agreement must be determined by looking to state law. *In re Harris Pine Mills*, 862 F.2d 217 (9th Cir.1988).

The two leases in this case are governed by Ohio law. A review of Ohio cases reveals that the exact nature of a lessee's interest under an oil and gas lease has not been clearly established in Ohio. As one court of appeals noted in *Rayl v. East Ohio Gas Company*, 46 Ohio App.2d 167, 348 N.E.2d 385, 389 (1973), "We use the term 'lease' loosely, because oil and gas agreements have been characterized as leases, licenses, corporeal hereditaments, rights, easements and/or interests in real estate."

Cases which discuss the character of the lessee's interest often do so in the context of determining the impact of a statute upon the oil and gas lease. For example, in *Langmede v. Weaver*, 65 Ohio St. 17, 60 N.E. 992 (1901), the court concluded that an oil and gas lease was "a lease of any estate or interest in real property" within the meaning of an Ohio statute which required the attestation of two subscribing witnesses in order for such leases to be valid. In *Acklin v. Waltermier*, 19 Ohio C.C. 872 (1899), the court held that a mortgage on the lessee's interest in an oil and gas lease, which the court referred to as a chattel real or estate for years, must be recorded, and that the leasehold interest was subject to levy. In *Jones v. Wood*, 9 Ohio C.C. 560 (1895), the court was concerned with whether the interest of the lessee was one which could be taxed. The court in *Wood* concluded that the agreement in question, which contained no clause granting rights to the oil *in situ*, was a license or lease at will, not a conveyance in fee.

Ohio courts have reached diverse conclusions concerning the nature of an oil and gas lease. In *Miller v. Vandergrift,* 12 Ohio C.C. (n.s.) 475 (1892) the court found that the oil and gas leases were not leases in the ordinary acceptation of the term, but rather sales of the oil and gas under the provisions contained in the contract. As purchaser of the oil and gas, the lessee "is licensed to enter and remove these substances and make return to the owner of the land for a certain proportion of the land thereof." *Hollister v. Vandergrift,* 12 Ohio C.C. (n.s.) 586, 590 (1892).

Another court held in *Ohio Oil Co. v. Toledo, Findlay & Springfield Railroad Co.,* 4 Ohio C.C. 210, 215–216 (1889) that an oil lease was

in the nature of an incorporeal hereditament; that, strictly speaking, it is not a right in the land as such, but a right to enter upon the land, to sink its wells, and to take from underneath the soil such oil as it may find—to take it from the land and to render a portion of it to the landowner, the remainder to become its own to dispose of as it sees fit.

The court concluded that the lessee had a property right so long as it conformed to the terms of the lease. In *Herrington v. Wood,* 6 Ohio C.C. 326, 330 (1892), the court concluded that the contract in question was "not strictly a lease, but a license coupled with a conditional grant, conveying the grantor's interest in the gas well, conditioned that gas or oil is found in paying quantities."

The Ohio courts in early cases distinguished between instruments which purported to convey title to the land containing the oil and gas and those which merely granted the right to explore for and produce oil and gas. In *Detlor v. Holland,* 57 Ohio St. 492, 49 N.E. 690 (1898), the Ohio Supreme Court found that an agreement which gave the lessee the sole right to produce petroleum and natural gas from a certain tract of land was not a lease of the lands, but only a grant of an exclusive right to produce oil and natural gas during the stipulated term. A similar agreement was construed in *Tucker v. Watts,* 1 Ohio C.C. (n.s.) 589, 592–593, where the court stated:

It will be observed that by this contract there is granted the privilege of producing oil—the privilege of going into possession of this land for the purpose of exploring for oil is the primary right. This right, the cases are agreed, is not an estate in the land, and while some difficulty is experienced by the different courts in the adequate legal expression of just the right conveyed, the substance of it is recognized by all. Some of the cases call it a right to possession and some a license, the terms varying, but all agreeing that to the producer is given the right to go upon the land and make search. No estate or interest in the land arises until the product is found, and then the interest becomes vested, and being vested, may be called an estate.

However, when the instrument in question granted "all the petroleum and gas in and under the following described tract of land, and also the said tract of land" for the purpose of drilling for oil and gas, the instrument was found to be a lease, not a license. *Brown v. Fowler,* 65 Ohio St. 507, 63 N.E. 76 (1902). *See also, Woodland Oil Co. v. Crawford,* 55 Ohio St. 161, 44 N.E. 1093 (1896). Under such language,

. . . [i]t is the land that is granted demised, and let for the limited purpose and period named in the lease. An instrument in such form is more than a mere license; it is a lease of the land for the purpose and period limited therein, and the lessee has a vested right to the possession of the land to the extent reasonably necessary to perform the terms of the instrument on his part.

*Harris v. Ohio Oil Co.,* 57 Ohio St. 118, 129–130, 48 N.E. 502 (1897).

In a more recent case, the Ohio Supreme Court again discussed the rights conveyed by an oil and gas lease in deciding whether Ohio law required that such leases be recorded. *See Back v. Ohio Fuel Gas Co.,* 160 Ohio St. 81, 113 N.E.2d 865 (1953). The document involved in *Back* purported to grant and convey "all the oil and gas in and under" the described premises, as well

as "the right and privilege of operating upon the said premises as aforesaid for the obtaining of such oil and gas." *Id.* at 83–84, 113 N.E.2d 865. The court stated, *Id* at 86, 113 N.E.2d 865:

> The character of the instrument of conveyance reveals that it is other than a grant of real property. Possession of oil and gas, having as they do a migratory character, can be acquired only by severing them from the land under which they lie, and in effect the instrument of conveyance in the instant case is no more than a license to effect such a severance. The very sale of oil and gas, separate and apart from the real estate surface, constitutes, in law, a constructive severance such as occurs in the case of sale of standing timber or growing crops.

> The instrument of conveyance, as a whole, bears the earmarks of a license. It grants operating privileges on the land surface, just as would be necessary to remove standing timber or growing crops in a sale thereof.

The court in *Back* went on to comment on the authorities which hold that the owner of the land surface does not own any oil or gas which may be located thereunder, that the landowner's only right is to extract them, and that he has no title to them until he does so. *Id.* at 86–87, 113 N.E.2d 865. The court, *Id.* at 88, 113 N.E.2d 865, noted its prior decision in *Kelley v. Ohio Oil Co.*, 57 Ohio St. 317, 49 N.E. 399 (1898), where the court held that petroleum is a mineral which forms a part of the realty while in the earth, but that when it is produced through a well to the surface, it becomes the personal property of the owner of the well. The court in *Back* concluded that the instrument before it was a license rather than a deed of conveyance. *Back,* 160 Ohio St. at 89, 113 N.E.2d 865.

The two leases involved in the present case are similar to the lease involved in *Back.* The Jenkins–Donia lease provides that the lessor

> ... does hereby grant unto the Lessee all of the oil and gas and/or the constituents of either, in and under the lands hereinafter described, together with the exclusive rights to drill for produce and market oil and gas and their constituents and also the right to enter thereon at all times for the purpose of drilling and operating for oil, gas and water and to possess, use and occupy so much of said premises as is necessary and convenient in removing the above named products ...

The Helen Dennis lease grants to the lessor the exclusive right to drill for produce and remove oil and gas from the described premises.

The application of § 365(d)(4) to an Ohio oil and gas lease was addressed by the bankruptcy court in *In re Gasoil, Inc.*, 59 B.R. 804 (Bankr.N.D.Ohio 1986). The court in *In re Gasoil* concluded that agreements before it were leases under Ohio law, and that regardless of whether they were leases or licenses, they still fell within the operation of § 365(d)(4) because they were rental agreements for the use of real property under § 365(m). In reaching these conclusions, the court relied primarily on two older Ohio circuit court cases, *Aklin v. Waltermier, supra* and *Jones v. Wood, supra,* wherein the courts were primarily concerned with issues other than the property rights of the oil and gas lessee. The court also noted *Woodland Oil Co. v. Crawford, supra* and *Harris v. Ohio Oil Co., supra.* However, as indicated above, the language in the conveying documents before the Ohio Supreme Court in those cases differed from the terms of the documents at issue in this case.

The result reached by the court in *In re Gasoil* differs from the conclusion arrived at by the courts in *In re Clark Resources, Inc.*, 68 B.R. 358 (Bankr.N.D.Okla.1986) and *In re Heston Oil Co.*, 69 B.R. 34 (N.D. Okla.1986), which declined to apply § 365(d)(4) to leases under Oklahoma law. The court in *Clark Resources,* 68 B.R. at 358–359, found that an Oklahoma oil and gas lease does not give rise to an estate in land, but rather creates a chattel real, an incorporeal hereditament and a profit a prendre which is in the nature of a license to explore by drilling and permits the les-

see to capture oil and gas which is then treated as personalty.

The operation of § 365(d)(4) was examined in light of Illinois law in *In re Hanson Oil Co., Inc.,* 97 B.R. 468 (Bankr.S.D.Ill. 1989). The court found that under Illinois law, an oil and gas lease grants a right to enter upon the surface of the land and to reduce the oil to the lessee's possession which is in effect a sale of a part of the land and a freehold estate. The court further found that Illinois law was similar to the Oklahoma view discussed in *Heston Oil* and *Clark Resources,* and concluded that § 365(d)(4) was not applicable to the Illinois lease.

Following a review of the Ohio cases, the court concludes that the oil and gas leases in this case are not leases as that term is traditionally used. These leases are more than a mere rental agreement for the use of real property. Rather, the Ohio courts appear to recognize that such leases create a license to enter upon the land for the purpose of exploring and drilling for oil and gas, and any oil and gas produced under the terms of the lease becomes the personal property of the lessee, with the exception of the one-eighth royalty reserved by the lessor. The court feels that the Ohio courts, if given the opportunity to do so, would characterize the property interest involved as being like or similar to the interest recognized under Oklahoma law. The court reaches this conclusion in part due to the similarities which are apparent in discussions of the rights of the oil and gas "lessee" under both Ohio and Oklahoma law, regardless of the label ultimately applied to those rights. The court also notes the Ohio Supreme Court's decision in *Back v. Ohio Fuel Gas Co., supra,* where the court followed the view of law common in most oil producing states, including Oklahoma. This provides an indication that Ohio courts would be more inclined to adopt a rule of law common to oil producing states.

The distinction between an oil and gas lease and a mere rental agreement for the use of property was recognized in *Rayl v. East Ohio Gas Co., supra,* where the court discussed the rights created by a gas storage agreement. The court noted, 348 N.E.2d at 388–389 that:

> The main difference is that an oil and gas lease is an exploitation of the minerals under the surface of an owner's land. The storage agreement is simply a rental agreement for the use of the lessor's land.

The court later repeated, *Id.,* 348 N.E.2d at 385–386:

> Additionally, as we have already indicated, there is no reason to treat the storage agreement as an oil and gas lease. It does not involve any grant of oil, gas, or minerals. It is simply a rental of land.

The *Rayl* decision, as well as other Ohio decisions previously discussed, indicate that an oil and gas lease is regarded under Ohio law as being more than a mere rental of the land for a specified term such as would be involved in a traditional lease.

The court also finds that these leases are not rental agreements for the use of real property for purposes of § 365(m). The agreements provide for the use of real property. However, not every use of real property is through a lease involving a rental agreement. *In re Hanson Oil Co., supra.* The oil and gas leases before the court provide for the payment of royalties in the form of a one-eighth part of the oil and gas produced, plus a sum referred to as "delayed rentals", which are in effect in lieu of royalties payable each quarter until a well is constructed. A royalty is a certain percentage of the oil or gas after it is found or produced, and is considered personal property. The words "rentals" and "royalty" are frequently used interchangeably. *Pure Oil Co. v. Kindall,* 116 Ohio St. 188, 156 N.E. 119 (1927). Thus, the use of the term "rentals" in these leases does not mean to convey that they are rental payments in the usual meaning of the term.

The court is further persuaded that the leases before it are not leases of nonresidential real property for purposes of § 365(d)(4) in light of the discussions of various courts concerning the legislative history behind the enactment of that provi-

sion. As the court noted in *Clark Resources*, 68 B.R. at 358–359:

> Although the term unexpired lease of nonresidential real property is nowhere defined in the Bankruptcy Code, the Legislative History of section 365(d)(4) is persuasive in limiting the scope of that bankruptcy code section. The statements of Senator Hatch included in the Legislative History evidence Congressional intent that section 365(d)(4) be applied to traditional leases of shopping centers and leases of other "nonresidential structures." The substantive amendments to section 365 incorporated in the Bankruptcy Amendment and Federal Judgeship Act of 1984 were "intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy case." 130 Cong.Rec. 58891 et seq. (daily ed. June 29, 1984). (Statement Sen. Hatch). Reprinted in 1984 U.S. Code Cong. & Adm. News 590, 598.

The court in *Hanson Oil Co.*, *supra*, agreed with the observations of the court in *Clark Resources*, stating:

> While the *Gasoil* court interpreted § 365(m) to justify a broad construction of § 365(d)(4), consideration of the purpose and effect of § 365(d)(4) lends support for the conclusion that this section should not be extended to the instant oil and gas lease. Section 365(d)(4) was enacted to protect affected parties, particularly shopping centers and their solvent tenants, from the commercial vacuum resulting from prolonged delay of the trustee in administering a bankruptcy case.

The court in *Hanson Oil Co.* went on to discuss the unique characteristics of an oil and gas lease, including the observation that the automatic termination upon cessation of production provided for by the lease would not be held in abeyance pending the trustee's decision to assume or reject, and concluded that the purpose of § 365(d)(4) would not be served by applying the requirements of § 365(d)(4) to such an oil and gas lease.

This court notes that the application of § 365(d)(4) to this type of oil and gas lease could potentially result in a windfall to the lessor and deprive the bankruptcy estate of a valuable asset due to the trustee's failure to promptly assume or reject the lease. Any possible injury to the lessor landowner does not correspond to the type and degree of harm sought to be prevented in the context of the shopping center tenant. On the other hand, since interests in oil and gas leases may be divided through multiple assignments, the failure of the trustee to act within sixty days and the resultant forfeiture could result in a loss of assets assigned to third parties uninvolved in and perhaps without notice of the bankruptcy proceedings.

The court finds that the oil and gas leases in this case are not leases of nonresidential real property within the meaning of § 365(d)(4) and § 365(m), and that the bankruptcy court's holding that the leases were forfeited under § 365(d)(4) was erroneous. The judgment of the bankruptcy court is reversed, and this case is remanded to the bankruptcy court for further proceedings consistent with this opinion.