[Cite as *Dundics v. Eric Petroleum Corp.*, 2017-Ohio-640.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THOMAS DUNDICS, ET AL., | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | CASE NO. 15 MA 0156 |
| V. | ) | |
| | ) | OPINION |
| ERIC PETROLEUM CORPORATION, ET AL., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas of Mahoning County, Ohio
Case No. 2014 CV 02981

JUDGMENT:     Affirmed

JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: February 17, 2017

APPEARANCES:

| For Plaintiffs-Appellants | Attorney Thomas Hull II |
| | Attorney David Detec |
| | 201 East Commerce Street |
| | Youngstown, Ohio 44503-1541 |

| For Defendants-Appellees | Attorney Thomas Hill |
| | 6075 Silica Road, Suite A |
| | Austintown, Ohio 44515-1053 |

| For Amicus Curiae | Attorney Timothy McGranor |
| | Attorney Mitchell Tobias |
| | 52 East Gay Street |
| | P.O. Box 1008 |
| | Columbus, Ohio 43216-1008 |

[Cite as *Dundics v. Eric Petroleum Corp.*, 2017-Ohio-640.]
DONOFRIO, P.J.

{¶1} Plaintiffs-Appellants, Thomas Dundics and IBIS Land Group, Ltd., appeal the dismissal of their complaint by the Mahoning County Court of Common Pleas for failure to state a claim upon which relief can be granted.[1]

{¶2} Appellants filed a complaint on November 14, 2014 against Defendants-Appellees, Eric Petroleum Corporation and Bruce Broker. Appellants' complaint included five counts. In count one of their complaint, Appellants alleged that they entered into an agreement with Appellees whereby Appellants would find property owners, negotiate gas leases, and work with Appellees to obtain executed gas leases. For compensation, Appellants alleged they were to receive $10.00 per leased acre and a 1% working interest in all wells placed on the leased acreage. Appellants further claimed in their complaint that oil and gas leases are not real estate and that, therefore, they did not need to be licensed real estate brokers to perform these services for Appellees. Appellants complained that they performed their end of the bargain and received some compensation. Now, Appellants complain, the leases may have been sold but Appellees refuse to provide an accounting or pay the monies due Appellants for services rendered. In counts two, three, four, and five of their complaint, Appellants assert alternative theories of conversion, fraud, unjust enrichment, and quantum meruit for the requested relief.

{¶3} On January 28, 2015, Appellees filed a motion to dismiss Appellants' complaint for failure to state a claim upon which relief could be granted because Appellants did not allege they were licensed real estate brokers as required by R.C. 4735.21, because the breach of contract claims were barred by the statute of frauds, because Appellants failed to plead fraud in their complaint with the particularity required by Civ.R. 9(B), and because Appellants failed to include in their complaint sufficient allegations necessary on any legal theory pled. Appellants filed a brief in opposition along with a motion to amend their complaint.

{¶4} On March 16, 2015, a hearing was held before a magistrate. The

---

[1] Amicus Curiae, American Association of Professional Landmen (Landmen), filed a Merit Brief in support of appellants' Merit Brief.

magistrate filed a Magistrate's Decision on May 27, 2015. The magistrate concluded that Appellants were required to have a real estate broker's license to perform the alleged services and Appellants were required to allege the same in their complaint pursuant to R.C. 4735.21. Because they did not make such an allegation, the magistrate concluded that Appellants failed to state a claim upon which relief could be granted and that their complaint must be dismissed. The magistrate denied Appellants' motion to amend their complaint because there was no set of circumstances that would provide them with a cognizable claim in law or equity.

{¶5} On June 17, 2015, Appellants filed objections to the Magistrate's Decision. Appellees filed a response on June 24, 2015. Appellants filed a motion for leave to supplement their objections on August 6, 2015, based on new information. On August 12, 2015, the trial court overruled Appellants' objections but did not rule on Appellants' August 12, 2015 motion for leave to supplement Appellants' objections. Appellants filed a timely appeal.

{¶6} Appellants assign two errors to the trial court. Their first assignment of error states:

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS/APPELLANTS' [sic.] MOTION TO DISMISS.

{¶7} In *Javorsky v. Sterling Med.*, 7th Dist. No. 14 MA 87, 2015-Ohio-2113, ¶ 11-12, we reiterated the standard of review regarding a trial court's dismissal of a complaint for failure to state a claim upon which relief can be granted. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. *Id.* citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,* 65 Ohio St.3d 545, 548, 1992-Ohio-73, 605 N.E.2d 378. In order to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must find beyond doubt that the plaintiff can prove no set of facts warranting relief after it presumes all factual allegations in the complaint are true, and construes all reasonable inferences in the

plaintiff's favor. *Javorsky,* at ¶ 11-12 citing *State ex rel. Seikbert v. Wilkinson,* 69 Ohio St.3d 489, 490, 1994-Ohio-39, 633 N.E.2d 1128. The appellate court is required to independently review the complaint to determine if the dismissal was appropriate. *Javorsky,* at ¶ 11-12 citing *Ferreri v. Plain Dealer Publishing Co.,* 142 Ohio App.3d 629, 639, 756 N.E.2d 712 (8th Dist.2001).

**{¶8}** The parties and Amicus Curiae agree that there are two decisions which have previously decided the issue before this court, *Binder v. OG Land Development and Exploration, LLC* N.D.Ohio No. 4:11-cv-02621, 2012 WL 1970239 (May 31, 2012), and *Wellington Resource Group, LLC v. Beck Energy Corp.,* 975 F.Supp.2d 833 (S.D.Ohio 2013). The courts in *Binder* and *Wellington* reached conflicting results. The *Binder* court concluded that one who engages in the brokering of oil and gas leases is subject to the provisions of R.C. 4735.21. The *Wellington* court concluded that such individuals are not limited by R.C. 4735.21. Appellants argue that the *Wellington* decision is the correct one and Appellees argue *Binder* is the correct decision.

**{¶9}** Appellants and Landmen (unless noted otherwise, collectively referred to as "Appellants") argue that R.C. 4735.21 is inapplicable because oil and gas leases are not interests in real estate. Appellants assert that *Wellington* is directly on point and that its reasoning requires that the trial court's decision be reversed. They suggest that to require a real estate broker's license to perform the services which Appellants performed here would require needless regulation and increased costs. Further, Appellants argue that the recent decision of the Ohio Supreme Court in *Chesapeake Exploration LLC., v. Buell,* 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, does not invalidate *Wellington* nor otherwise resolve the issue regarding the interpretation of R.C. 4735.21. Appellees argue that oil and gas rights are real estate under Ohio law and that the decisions interpreting the nature of these rights, including the recent decision by the Ohio Supreme Court in *Buell,* support the decision of the trial court.

**{¶10}** R.C. 4735.21 provides, in pertinent part:

No right of action shall accrue to any person, partnership, association, or corporation for the collection of compensation for the performance of the acts mentioned in section 4735.01 of the Revised Code, without alleging and proving that such person, partnership, association, or corporation was licensed as a real estate broker or foreign real estate dealer.

{¶11} R.C. 4735.01 defines a "real estate broker" as one who engages in certain specified conduct for compensation. The trial court concluded that Appellants' complaint alleged that they engaged in conduct identified in the statute. Specifically, the trial court concluded that Appellants' complaint alleged that they engaged in the following conduct identified in R.C. 4735.01(A):

(1) Sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of any real estate;

(2) Offers, attempts, or agrees to negotiate the sale, exchange, purchase, rental, or leasing of any real estate;

* * *

(7) Directs or assists in the procuring of prospects or the negotiation of any transaction, other than mortgage financing, which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate;

R.C. 4735.01(B) defines "real estate" as including "leaseholds as well as any and every interest or estate in land situated in this state, whether corporeal or incorporeal, whether freehold or nonfreehold, and the improvements on the land, but does not include cemetery interment rights."

{¶12} In *Binder,* plaintiff alleged that he agreed, in return for compensation, to identify landowners with whom defendant could negotiate to obtain mineral rights. *Binder* at *1. Plaintiff acknowledged that some payment had been offered by

defendant but that, for reasons irrelevant to that case, he refused to sign the check. He then filed suit. Defendant asked that plaintiff's claim be dismissed on the pleadings since plaintiff was not a licensed real estate broker pursuant to the above quoted statutes and, as a result, he could not maintain his lawsuit. The *Binder* court, relying on *Colucy v. D & H Coal Co.*, 186 N.E.2d 767 (Ohio C.P. 1961), concluded that, under Ohio law, mineral rights such as rights to coal, oil, and gas, are "real estate" as defined in R.C. 4735.01(B). As a result, plaintiff's claim was dismissed on the pleadings.

{¶13} *Colucy* involved a plaintiff who was given the right to purchase mineral rights, including rights to coal, oil, and gas, for the defendant. *Colucy* at 771. The Tuscarawas Common Pleas Court concluded "that it is quite apparent that the service the plaintiff performed or was to perform comes within the strict definition of the term 'Real Estate Broker' as defined by the statute." *Id.*

{¶14} The year after *Binder*, the *Wellington* court reached a different conclusion. The *Wellington* court determined that oil and gas leases are not "real estate" under Ohio law. *Wellington* at 838. The court in *Wellington* concluded that its "thorough survey of Ohio case law leaves this [the *Wellington*] Court convinced that the Ohio Supreme Court, if given the occasion to rule on this issue today, would so hold." *Id.* Referring to its prior decision in *In re Frederick Petroleum Corp.,* 98 B.R. 762 (S.D. Ohio 1989), the court acknowledged that the exact nature of a lessee's interest under an oil and gas lease has not been clearly established in Ohio. *Id.* at 839. The court then summarized a number of Ohio decisions for purposes of illustrating its observation that Ohio courts have treated oil and gas leases differently from an interest in real property.

{¶15} *Wellington* refers to *Detlor v. Holland,* 57 Ohio St. 492, 505, 49 N.E. 690 (1898), for the proposition that the right to produce oil and gas from a tract of land is not a lease but a grant of an exclusive right to produce oil and gas for the term of the agreement. *Wellington* at 839, quoting *Detlor* at 505-506. *Detlor* was an action to quiet title where the agreement to produce oil was limited to 90 days unless a

paying well was established within that time. It was not, and thus the court rejected the lessee's argument that oil and gas was included under the general language "other mineral rights." *Id.* at 503-504.

**{¶16}** However, as the *Wellington* court acknowledged, in *Harris v. Ohio Oil Co.,* 57 Ohio St. 118, 48 N.E. 502 (1897), the Ohio Supreme Court, stated that an oil and gas lease is more than a mere license and concluded that a lease to drill for oil and gas "is a lease of the land" and that "the lessee has a vested right to the possession of the land to the extent reasonably necessary * * *" *Id.* at 129-130.

**{¶17}** And, *Wellington* explained, more recently, in *Back v. Ohio Fuel Gas Co.,* 168 Ohio St. 81, 113 N.E.2d 865 (1953), the Ohio Supreme Court considered whether an instrument conveying a right and privilege to operate on land to obtain oil and gas and to lay pipe over the land to transfer the oil and gas should be recorded in the record of leases or in the record of deeds. *Id.* at 83. In considering whether such an instrument was a lease or a license, the Supreme Court discussed the nature of the activity of drilling for oil and gas:

> The character of the instrument of conveyance reveals that it is other than a grant of real property. Possession of oil and gas, having as they do a migratory character, can be acquired only by severing them from the land under which they lie, and in effect the instrument of conveyance in the instant case is no more than a license to effect such a severance. The very sale of oil and gas, separate and apart from the real estate surface, constitutes, in law, a constructive severance such as occurs in the case of sale of standing timber or growing crops.

*Id.* at 87. The Court then observed that in most producing states, gas and oil *in situ* are not subject to absolute ownership. *Id.* The Court concluded that the instrument in *Back* was, for recording purposes, a license rather than a deed of conveyance. *Id.* at 89. The Supreme Court observed that many authorities hold that the owner of the land surface does not own the oil and gas that may be in place thereunder. *Id.* at 86-

87. Apparently agreeing with its prior explanation in *Kelly v. Ohio Oil Co.,* 57 Ohio St. 317, 328, 49 N.E. 399 (1897), the Supreme Court observed that, while in the earth, oil is part of the realty "in which it tarries for the time being" until it is raised to the surface and then it becomes the subject of ownership separate from the realty. *Back* at 88-89 citing *Kelly* at 328. The Supreme Court held that the instrument in question there was a license rather than a deed and thus recording the instrument in the record of leases was sufficient to constitute constructive notice of its existence to a subsequent purchaser of the land. *Back* at 90. Thus, at first blush, it would appear that *Harris* (more than a mere license) and *Back* (no more than a mere license) are in conflict.

**{¶18}** Appellees argue that the recent *Buell* decision validates the trial court's decision here. *Buell* was an action brought in the federal district court for the Southern District of Ohio to quiet title to oil and gas rights against a surface property owner. *Buell* at ¶ 13. Because of the lack of available authority from Ohio courts regarding the interpretation of Ohio's Dormant Mineral Act in the context of an Ohio oil and gas lease, the federal court certified two questions to the Ohio Supreme Court. Although *Buell* does not involve R.C. 4735.21, some of its discussion about the nature of oil and gas is instructive.

**{¶19}** *Buell* observes that "[o]il and gas can be viewed as realty or personalty depending on the location of the oil and gas relative to the land in which it lies." *Id.* at ¶ 20. According to *Buell,* oil and gas underlying the surface have, in Ohio, long been recognized as part of the realty. *Id.* at ¶ 21. The interests in the surface and the minerals below the surface can be severed. However, even though these rights may be severed, the rights to the subsurface oil and gas may still affect the rights and/or value of the surface rights. According to *Buell,* absent language to the contrary in the conveying instrument, "a severed mineral estate is considered to include those rights to use of the surface as are reasonably necessary for the proper working of the mine and the obtaining of the minerals." *Id.* at 23.

**{¶20}** In *Buell,* the Supreme Court confronted the seemingly different

perceptions of the nature of oil and gas leases in *Harris* and *Back.* Indeed, the federal court suggested in its order certifying its questions to the Supreme Court that *Harris* and *Back* took divergent views of the nature of oil and gas leases. *Buell* at ¶ 45. *Buell* explained that *Harris* and *Back* are "not in direct conflict" because of the different language in the instruments at issue in each case. *Id.* at ¶ 48. In *Back*, the instrument was not a lease because the grant of the oil and gas rights was "forever." *Id.* at ¶ 46. According to *Buell*, the *Back* decision concluded that the instrument was a license rather than a deed of conveyance granting real property. *Id.* Thus, the Court concluded that, under the relevant statute, recording the instrument in the lease records rather than the deed records was sufficient constructive notice to a purchaser. *Id.* The instrument in *Harris,* however, was, according to *Buell,* "indisputably a lease." *Id* at ¶ 47. *Buell* explains that *Harris* concluded that the *Harris* instrument is more than a mere license, "it is a lease of land * * * " *Buell* at ¶ 47, citing *Harris* at 129-130.

**{¶21}** *Buell* then notes that this court's decision in *Eisenbarth v. Reusser,* 2014-Ohio-3792, 18 N.E.3d 477 (7th Dist.), is in accord with the Columbiana County Common Pleas Court in *Bender v. Morgan,* Columbiana C.P. No. 2012-CV-378 (Mar. 20, 2013), where the common pleas court observed that, in analyzing the meaning of a title transaction, the courts have "concluded that an oil and gas lease conveyed a fee simple determinable in the severed mineral rights subject to a reverter on conditions described in the lease * * * " *Buell* at ¶ 51. *Kramer v. PAC Drilling Oil & Gas, L.L.C.,* 197 Ohio App.2d 554, 2011-Ohio-6750, 968 N.E.2d 64, (9th Dist.) ¶ 11, is cited by *Buell* for reaching the same conclusion as *Bender,* i.e., an oil and gas lease grants a fee simple determinable to the lessee. *Id.* at ¶ 52. The Eleventh District similarly stated that the typical oil and gas lease "grants a fee simple determinable interest to the lessee." *Bernard Philip Dedor Revocable Trust v. Reserve Energy Exploration Co.,* 11th Dist. No. 2014-P-0001, 2014-Ohio-5383, 24 N.E.3d 1225, ¶ 20.

**{¶22}** In considering whether the services allegedly performed by Appellants

here come under the requirements set out in R.C. 4735.21, the following explanation in *Buell* is of some import: "Because the lessee also enjoys reasonable use of the surface estate to accomplish the purposes of the lease, the lease also similarly affects the surface estate. Thus, the lease affects the possession and custody of both the mineral and surface estates." *Id.* at 60. If the lessor conveys title to either the surface or mineral estates to a third party, the lease is binding on those successors and is therefore an encumbrance that remains with the realty. *Id.* at ¶ 61, citing *Eisenbarth* at ¶ 30. The lease affects the value of the property. *Id.* at ¶ 64. The "effect on ownership, possession, and custody is an inherent attribute of an oil and gas lease." *Id.*

{¶23} In light of the above, we return to the language of R.C. 4735.01(B)'s definition of "real estate." Real estate "includes leaseholds as well as any and every interest or estate in land." *Buell* reminds us that the Ohio Supreme Court has "long held that the use of the term 'any' in a phrase encompasses 'every' and 'all' examples of the subject described." *Id.* at ¶ 34. Further, the word "includes" indicates a partial list. *Id.* at ¶ 35. This definition includes the various descriptions and explanations discussed above. Whether described as licenses, leases, fee simple determinable estates, or something else, any instrument affecting oil and gas necessarily affects the surface rights as well, either in terms of the right to access the surface for transportation, drilling, etc., or because it affects the value of the surface rights, it falls under the definition of "real estate." Thus, to engage in any of the activities alleged here for compensation, one must have a broker's license.

{¶24} In further support of Appellants' first assignment of error, the Landmen argue that recent proposed legislation, seeking to establish requirements governing oil and gas land professionals, supports its position that Chapter 4735 does not apply to Appellants here, even though the legislation was never adopted. But the proposed un-enacted legislation upon which Appellants rely is insufficient to establish a contrary interpretation to Chapter 4735.

{¶25} Next, the Landmen complain that the requirements necessary to obtain

a real estate broker's license focus on residential and commercial surface estates and do not contain requirements germane specifically to oil and gas. But the Landmen cite no authority which suggests we must find R.C. 4753.21 inapplicable here because the licensing requirements are less than what they might be, or that there should be additional requirements more specific to oil and gas rights. The Landmen also complain that this statute is susceptible to more than one interpretation and that we, therefore, should glean the General Assembly's intent, including the spirit of the statute and the public policy that induced the statute's enactment. However, as is discussed above, the fact that oil and gas rights are different does not excuse third parties who ask the courts to enforce their engagement with either owners of surface real estate or those who wish to extract subsurface oil or gas from the real estate broker's license requirements at issue here, nor do the Landmen explain why the difference should compel this result.

**{¶26}** As Appellees observe, this court recently confirmed the rule that inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or other factors identified in R.C. 1.49, is inappropriate unless we find the statute is ambiguous. *Tribett v. Sheperd,* 7th Dist. No. 13 BE 22, 2014-Ohio-4320, fn.1, appeal pending, 142 Ohio St.3d 1447, 2015-Ohio-1591, citing *Dunbar v. State,* 136 Ohio St.3d 181, 2013-Ohio-2163, ¶ 16. The statute is unambiguous. The question presented is whether a third person, with some exceptions, who uses his or her skills to bring together landowners with those engaged in extracting oil and gas from below the surface needs to have a real estate broker's license in order to maintain an action for compensation for those services, as required by R.C. 4735.21. Answering that question requires a consideration of the nature of oil and gas leases under Ohio law. Although *Binder* and *Wellington* reached different results, it was not because the statute was ambiguous. It involved, instead, a determination of the meaning of the words "any and every interest or estate in land" as used in R.C. 4735.01(B). We conclude that the right to subsurface oil and gas is such an interest.

**{¶27}** As discussed above, any agreement allowing one to reach beneath

surface land for oil and gas, no matter what instrument is used to memorialize that agreement, necessarily affects the surface land either by allowing one of the parties to enter and/or use the surface land for various purposes or by affecting the value of the surface land. Appellees contend that third parties engaged in this process must have a real estate broker's license and, unlike the Landmen, discuss the history of R.C. 4735.21, the statutory construction, the object of the legislation, and the nature of landmen. For example, Appellees point out that a 1942 Ohio Attorney General opinion concluded that gas and oil leases are included in the definition of real estate and third parties engaging in the sale, exchange, or purchase of oil and gas leases for compensation had to have a real estate broker's license. Appellees also explain that a 1936 Ohio Attorney General Opinion that concluded that the sale of cemetery lots were also included in this definition resulted in a statutory amendment excluding the same. Appellees also argue that many landmen are excluded from the licensing requirement of R.C. 4735.21 by the exclusions provided in R.C. 4735.01(I)(1)(a). Under that provision, regular employees of "persons, partnerships, associations" are excluded with reference to real estate owned by such persons or entities. Neither Appellants nor the Landmen have replied to these representations by Appellees.

{¶28} Appellants further argue that even if R.C. 4735.21 is applicable, they should nonetheless be able to pursue their fraud claim. (The Landmen do not address this issue). Appellants assert that there should be an exception to a claim of fraud in relation to R.C. 4735.21 in order to prevent one from using the law to help perpetrate a fraud.  Appellants first rely on the syllabus in *Gathagan v. Firestone Tire and Rubber Co.,* 23 Ohio App.3d 16, 490 N.E.2d 923 (9th Dist. 1985). *Gathagan,* as it pertains here, involved an alleged oral promise of employment for at least two years. R.C. 1335.05, a part of the statute of frauds, provides that contracts that cannot be completed in two years must be in writing. There, the court indicated it would not permit a statute designed to prevent fraud to be used as a shield to protect against fraud. *Id.* at 16. Similarly, Appellants rely on this court's decision in *Filo v. Liberato,* 7th Dist. No. 11 MA 18, 2013-Ohio-1014, based, in pertinent part, on the

"lead object rule." Again, however, *Filo* was concerned with the statute of frauds.

{¶29} Appellees respond by arguing that Appellants cannot assert this issue as error because they did not present it as an objection to the Magistrate's Decision in the trial court. Civ.R. 53(D)(3)(b)(iv) provides:

> Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

{¶30} A fair reading of Appellants' objections to the Magistrate's Decision reflects that the argument that fraud be an exception to the requirement in R.C. 4735.21 was not made to the trial court and thus cannot be considered on appeal.

{¶31} Appellees also argue that, even if the fraud exception argument is considered, it should nonetheless be rejected. Indeed, in *Binder* the court concluded that the plaintiff's fraud claim was barred by his failure to hold a real estate broker's license as required by R.C. 4735.21. Appellees also respond to Appellants' attempt to discount the decisions in *Kapel v. Carnegie Management & Dev. Corp.,* 8th Dist. No. 67939, 1995 WL 277118 (May 11, 1995) and *Peltier v. McCoppin, 2*nd Dist. No. 75 CA 2, 1975 WL 182192 (Aug. 19, 1975) because those cases were decided on summary judgment rather than for failure to state a claim on which relief can be granted, as here. In *Kapel,* the court observed that if a party is barred from pursuing a claim under R.C. 4735.01, it does not matter that he also claims causes of action under the theories of breach of contract, fraud, quantum meruit and unjust enrichment. *Kapel* at *4. If barred from pursuing a claim for commissions by statute, one cannot reach for equitable or other forms of relief in order to defeat the public policy adopted by the legislature. *Id.* Similarly, in *Peltier,* the court concluded that since the plaintiff incorporated the facts from his breach of contract claim into his fraud claim, as Appellants did here, the contract claim was barred by R.C. 4735.21,

as was the fraud claim. Appellants cite no law to the contrary.

**{¶32}** Accordingly, Appellants' first assignment of error is without merit and is overruled.

**{¶33}** Appellants' second assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO ALLOW PLAINTIFFS/APPELLANTS TO AMEND THEIR COMPLAINT TO CLARIFY THE FACTS AT ISSUE AND STATE A CLAIM THAT IS NOT BARRED BY O.R.C. 4735.21.

**{¶34}** Appellants filed with the trial court what they styled an alternative motion to amend their complaint. In their initial motion, Appellants simply stated that, in the event the trial court found merit in any of the arguments offered by Appellees, Appellants sought leave to amend the complaint to correct any deficits in the pleading. Appellants offered no other reason and did not file a proposed amended complaint. In a subsequent pleading Appellants asserted that they had not supplied reasons to amend their complaint because they did not believe there was any reason to amend their complaint. Appellants suggest that the amendment would only be necessary if the trial court concluded that their claims for fraud and conversion were insufficiently pled.

**{¶35}** The trial court ultimately did not dismiss any of Appellants' claims because they were insufficiently pled. Instead, citing *Walgate v. Kasich,* 10th Dist. No. 12AP-548, 2013-Ohio-946, 989 N.E.2d 140, ¶ 35, affirmed in part and reversed in part, *Walgate v. Kasich,* 2016-Ohio-1176, the magistrate, and then the trial court, denied Appellants' motion to amend the complaint because they provided no grounds as to why leave should be granted, no explanation of any new matters they wished to include in the complaint, and no explanation of how the amendment would cure any deficiencies in the complaint.

**{¶36}** In their Objection to the Magistrate Decision, Appellants did not object to the denial of their alternative motion to amend their complaint.

**{¶37}** As Appellees point out, the trial court signed its judgment entry on August 3, 2015. It was not filed until August 12, 2015. Appellants, on August 6, 2015, filed a Motion for Leave to Supplement Plaintiff's Objections to the Magistrate Decision of May 27, 2015 Based on New Information. Leave was never granted or denied. Appellants state therein that the reason for the filing was to support its motion for leave to file an amended complaint and to support the fraud allegation. Attached were an email from 2011, the affidavit of Appellant Dundics, and a First Amended Complaint With Jury Demand. In essence, in addition to the previous claims, Appellants now alleged that they performed consulting services directly to Appellees based on Appellant Dundics' extensive oil and gas knowledge and expertise and that those services are not governed by R.C. 4735.21.

**{¶38}** It is clear that this last filing was never considered by the magistrate or the trial court. As noted above, the motion for leave to supplement was not timely filed, leave was never granted, and, because of the timing, the trial court never considered the motion. Appellees draw the court's attention, again, to Civ.R. 53(D)(3)(b)(iii) as interpreted in *Abshire v. Mauger,* 10th Dist. No. 09AP-83, 2010-Ohio-787, ¶ 17, quoting *Beasely v. Beasely*, 4th Dist. No. 06CA821, 2006-Ohio-2000, ¶ 13:

> [N]either Civ.R. 53 nor statutory law permits a party to submit a memorandum supplementing her timely objections to a magistrate's decision, as of right, after the time for filing objections has passed. Civ.R. 53(E)(3)(a) only permits a party to file objections to a magistrate's decision within fourteen days of the filing of the decision. Courts may grant a party leave to supplement [her] objections upon request.

**{¶39}** Here, the Magistrate's Decision was filed on May 27, 2015. Appellants filed objections to the Magistrate's Decision on June 17, 2015. In each of its pleadings prior to the last, Appellants offered no proposed amended complaint, no reason why an amended pleading should be permitted, and no proposed allegations

which might establish a different claim for relief. Instead, as Appellees note, Appellants asserted that they saw no need to file an amended complaint unless the trial court concluded that their initial claims were somehow deficient. They suggested no alternative legal theory or facts. Under these circumstances, we cannot conclude that the trial court erred in denying Appellants' leave to amend their complaint. The last pleading was untimely and was never ruled upon by the trial court.

**{¶40}** Accordingly, Appellants' second assignment of error is without merit and is overruled.

**{¶41}** For the reasons stated above, the trial court's judgment is hereby affirmed.

DeGenaro, J., concurs.

Robb, P.J., concurs.